Robert B. REICH, Secretary of Labor, United States Department of Labor, Plaintiff–Appellee,

v.

NEW YORK CITY TRANSIT AUTHORITY, A Corporation, Defendant–Appellant.

No. 555, Docket 94–6104.

United States Court of Appeals, Second Circuit.

Argued Oct. 26, 1994.

Decided Jan. 17, 1995.

ing that the New York City Transit Authority (the "TA") is required to compensate each of its Police Department's canine handlers, under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (the "FLSA"), as amended by the Portal-to-Portal Act, 29 U.S.C. § 251, *et seq.*, for the entire time spent commuting to and from work accompanied by the dog entrusted to him. The TA contends that such commuting time is not compensable under the FLSA.

For the reasons stated below, we reverse.

*Factual Background*

Police officers in the TA Police Department's canine unit ("handlers") patrol the subways accompanied by male german shepherd dogs. Each handler is responsible for feeding, grooming, training, and caring for his dog, and is required to take the dog home with him at the end of the working day. For reasons relating to the training of the dogs, the handlers are not permitted to use public transportation in taking their dogs to and from work. Upon accepting assignment to the canine unit (which is voluntary), each handler was informed that he would not be compensated for home care or commuting time. The applicable collective bargaining agreement made no provision for such compensation.

In December of 1989, the DOL commenced this action against the TA under Section 17 of the FLSA, 29 U.S.C. § 217, seeking an injunction requiring the TA to pay the handlers overtime compensation both for time spent caring for the dogs at home and for commuting to and from work. The TA and DOL settled certain claims. In accordance with this settlement, the TA amended its collective bargaining agreement with the handlers' union, the Patrolmen's Benevolent Association, to include a provision entitling the handlers to compensation for limited time devoted to "dog care work" at home.[1] Accordingly, the issue that remained to be resolved in litigation was whether, and to what

Joan Brenner, Washington, DC (U.S. Dept. of Labor, Thomas S. Williamson, Jr., Sol. of Labor, Monica Gallagher, Associate Sol. and William J. Stone, for App. Litigation), for plaintiff-appellee-cross-appellant.

Myron D. Rumeld, New York City (Proskauer Rose Goetz & Mendelsohn, Neil H. Abramson, of counsel), for defendant-appellant-cross-appellee.

Before VAN GRAAFEILAND, McLAUGHLIN and LEVAL, Circuit Judges.

LEVAL, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the Eastern District of New York, Arthur D. Spatt, *Judge,* in favor of the plaintiff, the United States Department of Labor ("DOL"), hold-

[1]. The Amendment provides that the handlers will be compensated for a maximum of one hour per day of workday home care and one and one-half hours per day of non-workday home care. This covers time spent feeding, training, grooming, and exercising the dogs, as well as cleaning the home and kennel.

extent, the handlers should be paid for commuting time.

### The Proceedings Below

A three-day bench trial was conducted before Judge Spatt. *See Reich v. New York City Transit Authority*, 839 F.Supp. 171, 173 (E.D.N.Y.1993). The district court's findings included that handlers patrol the subways and other areas with their dogs to deter crime, arrest suspects and conduct searches; in order to create a bond between the handler and the dog, each handler bears sole responsibility for the care of the dog; the handlers consider their dogs "tools," as well as pets; all handlers must report to work at the Brooklyn Army Terminal to receive their daily assignments, and are required to commute using personal vehicles;[2] during the commuting trip, dogs sometimes divert the handlers' attention or require care or clean up if they bark, or become unruly or sick. *Id.* at 173–74, 178.

The court found that, while the handlers' commuting time is not substantially increased, the dogs' presence does "restrict" the personal activity of the handlers and can cause inconvenience or a need to clean up.[3] *Id.* at 178.

Based on these findings, the court concluded that, following *Graham v. City of Chicago*, 828 F.Supp. 576 (N.D.Ill.1993), the TA was required to compensate the handlers for all time spent commuting to and from work. The court found that transporting the dogs is compensable "because that activity is not *segregable* from the primary activity the officers are engaged in." *Id.* at 181 (emphasis in original). The court ordered the TA to pay overtime back wages totalling $146,-267.68.[4]

### Contentions on Appeal

On appeal, the TA argues primarily that the FLSA does not require it to compensate its handlers for commuting time. It contends that because the Portal-to-Portal Act exempts time spent "walking, riding, or traveling" to and from work, 29 U.S.C. § 254(a)(1), no part of the commute, including that portion actually spent caring for the dog, is compensable. It contends further that the statute's exemption for activities that are "preliminary" or "postliminary" to the employee's "principal activities" also precludes liability for the commute. 29 U.S.C. § 254(a)(2). As its secondary argument, the TA contends that, if any of the commuting time is deemed compensable, it should be limited to time spent actively caring for the dogs, which is *de minimis*. The DOL, on the other hand, contends that the entire commute should be compensated because the handlers are engaged in a "principal activity" during the commute, thereby rendering the travel and preliminary/postliminary exceptions inapplicable. That principal activity, in the DOL's view, is the "total care of the dog."

We find the principal positions of both parties exaggerated. We agree with the TA's secondary position that the only compensable portion of the commute is the time spent by the handlers *actively* caring for their dogs, and that the vast majority of the time, while the handler is driving and the dog is quietly occupying the back of the car, is not compensable work under the FLSA.

### Discussion

#### I. The FLSA and the Portal-to-Portal Act

■ The purpose of the FLSA, passed in 1938, was to "guarantee[ ] compensation for all work or employment engaged in by employees covered by the Act." *Tennessee*

---

2. It appears that the rule forbids transporting the dogs on public mass transportation. While, in practice, handlers generally drive to work in their own cars (which they park for free), no rule requires that the handler be the one who drives or that he use his own car.

3. One witness testified that he had to stop his car ten to twelve times in two and one half years. *Id.* at 176. A second handler stated that he was required to stop his car and walk his dog more

than 20 times each year. *Id.* at 174. A third handler testified that he "never stops enroute." *Id.* at 176.

4. The parties agreed that the rate of pay to be used to arrive at the compensation figure for commuting time was an hourly rate of $3.80 and the time and one-half rate of $5.70 per hour. JA 652.

*Coal, Iron & R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 602, 64 S.Ct. 698, 705, 88 L.Ed. 949 (1944). The Act requires employers to pay overtime for "employment in excess of [forty hours] at a rate not less than one and one-half times the regular rate at which [the employee] is employed." 29 U.S.C. § 207(a)(1). While Congress made clear that employers are required to compensate employees for "work" or "employment," it did not define the contours of the type of "work" or "employment" that merited such compensation.

The Portal-to-Portal Act, which amended the FLSA in 1947, 29 U.S.C. § 251, *et seq.,* represented an attempt by Congress to delineate certain activities which did not constitute work, and therefore did not require compensation. It was passed in response to the Supreme Court's decision in *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), which construed the FLSA to require compensation for such activities as walking from the factory gate to the workbench, and changing into work clothes. *Id.* at 692–93, 66 S.Ct. at 1195.

Congress made findings "that the [FLSA] has been interpreted judicially in disregard of long-established customs, ... thereby creating wholly unexpected liabilities, immense in amount and retroactive in operation, ... with the result that, if ... claims arising under such interpretations were permitted to stand, (1) the payment of such liabilities would bring about financial ruin of many employers ... [and] (4) employees would receive windfall payments ... of sums for activities performed by them without any expectation of reward beyond that included in their agreed rates of pay...." 29 U.S.C. § 251(a). The Act was intended to relieve employers from liability for preliminaries, most of them relatively effortless, that were thought to fall outside the conventional expectations and customs of compensation.

 The TA contends that its liability is precluded by each of the two exemptions specified in the Act. *See* 29 U.S.C. § 254(a)(1) and (2). The Act provides (with certain exceptions) that:

> no employer shall be subject to any liability ... under the Fair Labor Standards Act of 1938 ... on account of the failure of such employer to pay an employee ... (1) ... [for] traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and (2) [for] activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

The TA contends that the "principal activity or activities" of the handlers are limited to patrolling the trains and related activities during the workday. It therefore contends that the commute, and the activities conducted by the handlers during the commute, are exempted from compensation by both the travel exemption and the preliminary/postliminary exemption, as they occur before and after the performance of the handlers' principal activities.

The DOL would define the "principal activities" of the handlers far more broadly, to include also feeding, caring for, and walking the dogs, maintaining a relationship with them, and transporting them. The DOL maintains that these aspects of the handlers' jobs are an important part of the handlers' duties and are performed on the commute and at home during the hours of absence from patrol duties. The DOL thus contends that the commute does not fall within the Portal-to-Portal exemptions, both because it involves principal activities and because it does not occur either "prior to the time on any particular workday at which [the handler] commences, or subsequent to the time on any particular workday at which he ceases, [his] principal activity or activities." 29 U.S.C. § 254(a).

The authorities offer little guidance as to the meaning of the term "principal activity or activities," or how to distinguish non-compensable preliminary/postliminary activities. And the guidance that does exist tends to be circular. The basis offered for making this distinction was first expressed by the Supreme Court in *Steiner v. Mitchell,* 350 U.S. 247, 76 S.Ct. 330, 100 L.Ed. 267 (1956),

where the Court advised that duties should be considered principal activities, rather than non-compensable preliminary or postliminary tasks, if they are "an integral and indispensable part of the principal activities for which covered workmen are employed...." *Id.* at 256, 76 S.Ct. at 335. Applying this standard, the Court found, given the high risks to employee safety resulting from toxicity of the environment in an electric battery plant, that the employees' dressing, undressing, and showering were integral and indispensable to the principal activity of producing batteries and were thus a compensable principal activity, even though changing clothes and showering in ordinary circumstances were conceded by the government to be non-compensable.

The Court likewise found in *Mitchell v. King Packing Co.*, 350 U.S. 260, 76 S.Ct. 337, 100 L.Ed. 282 (1956), that, for butchers, knife-sharpening performed before or after the work shift or during the employees' lunch hour was compensable as "an integral part of and indispensable to the various butchering activities for which [the employees] were principally employed." *Id.* at 263, 76 S.Ct. at 339. In *Barrentine v. Arkansas–Best Freight System, Inc.*, 750 F.2d 47 (8th Cir. 1984), *cert. denied,* 471 U.S. 1054, 105 S.Ct. 2116, 85 L.Ed.2d 480 (1985), truck drivers were found to be entitled to compensation for time spent driving company trucks to the garage for repairs prior to departing on the freight haulage route because these activities are "so indispensable to appellees' principal activity as to be outside the Portal-to-Portal exemption." *Id.* at 50–51.[5]

But in *Leone v. Mobil Oil Corp.*, 523 F.2d 1153 (D.C.Cir.1975), employee representatives were not entitled to compensation for accompanying federal safety inspectors in a workplace inspection where the employer did not select the representative and had no control over the representative's participation, and the inspection benefitted the employee. *Id.* at 1163. And in *Lindow v. United States*, 738 F.2d 1057 (9th Cir.1984), no compensation was found owing where engineering employees of the Army Engineer

Corps arrived at work a few minutes early, sometimes spending a few minutes prior to the workday reviewing logs, exchanging information, and opening gates. The court stressed that the employer had made clear that the employees were not expected to arrive early and that it would be difficult for the employer to maintain records for such brief fragmentary episodes of extra activity. As to much of these claims, the court found that they were excludible from compensation under the *de minimis* rule.

 While no clear standards emerge, certain generalizations can be drawn from these authorities. The more the preliminary (or postliminary) activity is undertaken for the employer's benefit, the more indispensable it is to the primary goal of the employee's work, and the less choice the employee has in the matter, the more likely such work will be found to be compensable. Commuting and similar activities are generally not compensable. The ability of the employer to maintain records of such time expended is a factor. And, where the compensable preliminary work is truly minimal, it is the policy of the law to disregard it. It is our conclusion, after considering the available guidance, that both sides' principal arguments fall wide of the mark.

We think the TA's reading of "principal activity or activities" as limited to patrolling the trains, and not including even the time spent in off hours feeding, training, and walking the dogs, is too narrow and would lead to anomalous and unjustifiable results. Feeding, training, and walking are work and are indispensable to the dogs' well-being and to the employer's use of the dogs in its business. If the concept of principal activity were as narrow as the TA argues, then an employer could impose significant, time-consuming duties on the employee to be performed at home, before and after the main body of the workday, as well as during the commute, and be exempted from payment for those duties because they were not sufficiently related to the employee's principal duties

---

5. *See also Vega v. Gasper*, 36 F.3d 417, 424–27 (5th Cir.1994) (lengthy bus transportation of agricultural workers to fields not compensable where the workers were not required to travel in the company bus; as to waiting time, remanded for findings whether the waiting was for the employer's benefit, which would render it compensable).

performed during the workday. We think that such an interpretation would exaggerate the effect of the Portal-to-Portal exemptions, and would substantially undermine the purposes of the Fair Labor Standards Act by creating loopholes capable of significant abuse.

The Portal-to-Portal exemptions properly protect employers from responsibility for commuting time and for relatively trivial, non-onerous aspects of preliminary preparation, maintenance and clean up. Congress's undertaking to exempt such conventionally unpaid preliminaries (and postliminaries) from compensation in no way suggests, however, that real work assignments are exempt from compensation, just because they occur outside the confines of the main part of the workday. Furthermore, even if the travel exemption protected the employer from being responsible for compensating *travel time,* it would not follow that the employer is exempt from payment for actual work required to be done during such travel. We therefore reject the TA's contention that the travel exemption immunizes it from liability for any tasks imposed on handlers to be performed during the commute. *See* 29 C.F.R. § 785.41 ("Any work which an employee is required to perform while traveling must, of course, be counted as hours worked."). We also reject the contention that feeding, walking, training or disciplining, when they occur during the commute, are non-compensable preliminary/postliminary activities.

On the other hand, we also find that the DOL's contentions are exaggerated. While we agree with the DOL that walking, feeding, training, grooming and cleaning up are integral and indispensable parts of the handler's principal activities and are compensable as work, the DOL goes much further. Pointing to the fact that the handler may not take the dog on public transportation, and that the obligation to walk or discipline the dog, or to clean up if the dog has become sick, or to communicate with the dog, can arise at any time during the commute, the DOL contends that the entire duration of the commute is compensable work time.

This goes too far. If accepted, the argument the DOL uses to justify charging the TA for the entire period of the commute would also justify charging for 24 hours a day. There are obligations that fall on the handlers 24 hours a day, and others that can arise at any time during the day or night. Handlers are required to house the dogs at their homes, to walk them, discipline them, and clean up after them whenever the need may arise, even if it were in the middle of the night, and to maintain a suitable relationship with the dog at all times when they are in the dog's presence. Acceptance of the DOL's arguments would require the conclusion that handlers must be compensated around the clock, waking and sleeping, because certain obligations are always present.

To resolve the dispute in this case, it is necessary to return to the basic principle that underlies the FLSA: Employees are entitled to compensation only for "work." As the Supreme Court found in *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949 (1944), an activity constitutes "work" (compensable under the FLSA) if it involves "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Id.* at 598, 64 S.Ct. at 703. To be sure, on occasions, courts have found that compensable work can occur despite absence of exertion, where, for example, employees have been required to stand by and wait for the employer's benefit. *See Armour & Co. v. Wantock,* 323 U.S. 126, 133, 65 S.Ct. 165, 168, 89 L.Ed. 118 (1944); *Vega v. Gasper,* 36 F.3d 417, 425–27 (5th Cir.1994); *Hill v. United States,* 751 F.2d 810, 812–13 (6th Cir.1984), *cert. denied,* 474 U.S. 817, 106 S.Ct. 63, 88 L.Ed.2d 51 (1985). Here, however, the activity of commuting involved neither exertion nor loss of time. Although forbidden to use public transportation, the handlers were not required to drive; the only requirement was that the ride be in a private vehicle. And the district court explicitly found that the handlers' commuting time was not substantially increased by their dog-care activities. 839 F.Supp. at 178.

We believe that the district court erred when it concluded that the handlers' entire

commute should be compensated. The DOL did not demonstrate that the entire commute satisfies the statutory concept of compensable work, as illuminated by the Supreme Court's decisions in *Tennessee Coal* and *Armour. See also* 29 C.F.R. § 785.7. While there are occasions where dogs need to be walked or restrained, or the car requires cleaning, during the major part of commuting time no work is required. The handler merely drives with the dog in the back seat. The mere presence of a dog does not make the commute compensable.

We therefore conclude that the time spent by handlers driving to and from work with their dogs, except to the extent that actual duties of care, feeding, training, walking or cleaning up occur during such commute, is not compensable work. Such true dog-care work occurring during the commute, however, is not exempted from compensation by the Portal-to-Portal Act.

## II. The De Minimis Doctrine

 The question that remains is whether, as the TA contends, the amount of theoretically compensable work that arises during the commute is so negligible as to be *de minimis* and therefore not compensable under the FLSA. The *de minimis* doctrine was first articulated by the Supreme Court in *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). The Court explained:

> The workweek contemplated by § 7(a) must be computed in light of the realities of the industrial world. When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded. Split-second absurdities are not justified by the actualities of working conditions or by the policy of the Fair Labor Standards Act. It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved.

*Id.* at 692, 66 S.Ct. at 1195.

More recently, in *Lindow v. United States,* 738 F.2d 1057 (9th Cir.1984), the Ninth Cir-

cuit explained that three factors should be examined to assess whether otherwise compensable time should be considered *de minimis,* and therefore not compensable: (1) the practical administrative difficulty of recording the additional time; (2) the size of the claim in the aggregate; and (3) whether "the claimants performed the work on a regular basis." *Id.* at 1062–63. *See also Hill,* 751 F.2d at 815 (holding that interruption of postal worker during lunch was *de minimis,* requiring no compensation under the FLSA). Applying these factors, the Ninth Circuit found that the employees should not be compensated for the average of seven to eight minutes of pre-shift activities that occurred. *Lindow,* 738 F.2d at 1063–64. In so ruling, the court emphasized the administrative difficulty involved in recording this overtime, the wide variance among employees of time spent on social versus compensable activities, and the irregularity with which the employees engaged in compensable activities. *Id.*

Based on our review of the record, we too conclude that the time spent by the handlers engaged in active duties during the commute was *de minimis.* While handlers testified that they were required to restrain their dogs when they barked or misbehaved, it does not appear that such behavior occurred frequently or lasted for a significant time. Indeed, most handlers conveyed that their dogs responded quickly to discipline; it appears the time spent disciplining the dogs was insubstantial. Similarly, the cases in which the dogs vomited or soiled their handlers' cars, or required a stop to be walked, were few and far between. Stops for water were more frequent in the heat of summer, but consumed only a few minutes. Considered in the aggregate, the time spent by handlers in dog-care duties during the commute was neither substantial, nor regularly occurring.[6] For a number of reasons, furthermore, it would be administratively difficult for the TA to monitor and record the time expended by handlers in dog-care duties

---

**6.** The District Court for the District of Columbia recently concluded in a similar action that no significant dog-care work was done during the commute. *See Levering v. District of Columbia,* 869 F.Supp. 24, 29–30 (D.C.D.C.1994) (dog-care work performed during the police handlers' commute was not significant enough to require compensation under the FLSA).

during the commute. The task of recording the time spent in such duties, when they arise, might well exceed the time expended in performance of the duties. Considering the administrative difficulty of establishing a reliable system for recording the time spent in such care during commutes, the irregularity of the occurrence, and the tiny amount of aggregate time so expended, we conclude that these episodes of additional compensable work are *de minimis* and, therefore, need not be compensated.

### Conclusion

The judgment of the district court is reversed. The matter is remanded with instructions to enter judgment in favor of the Transit Authority.