**Martin M. AGUILAR, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 93–561C.

United States Court of Federal Claims.

Oct. 7, 1996.

Thomas A. Woodley, Washington, DC, for plaintiffs. Gregory K. McGillivary, Washington, DC, of counsel.

Hillary A. Stern, Washington, DC, with whom were Acting Assistant Attorney General Frank W. Hunger and Director David M. Cohen, for defendant.

## ORDER

MOODY R. TIDWELL, III, Judge:

This case is before the court on the parties' cross motions for partial summary judgment, filed pursuant to RCFC 56(c). For the reasons set forth below, the court grants defendant's motion for partial summary judgment, and denies plaintiffs' cross motion. Oral argument is not deemed necessary.

## FACTS

Plaintiffs are either current or former employees of the Immigration and Naturalization Service ("INS"), who are or were engaged as border patrol agents and canine handlers. Plaintiffs' duties require them to transport their dogs to and from their principal place of employment and to kennel their dogs at their residences. The government provides the agents with specially marked and equipped government vehicles to transport the dogs. The agents are prohibited from making any personal use of the government vehicles during their travel to and from home or assigned duty points.

In September 1993, plaintiffs filed suit against the United States seeking backpay and other compensation under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201–219 (1994) ("FLSA" or "Act"), for, among other things, transporting the dogs. Defendant filed a motion for partial summary judgment in December 1995 on the ground that the FLSA does not require the government to compensate border patrol canine handlers for time spent commuting to and from work with their assigned canine units. The government contends that such time is not compensable under the FLSA for two reasons: (1) commuting time is exempt from the FLSA's compensation requirements based on the Portal-to-Portal Act of 1947, 29 U.S.C. §§ 251–262 (1994) ("Portal-to-Portal Act");

and, alternatively, (2) such time is exempt as *de minimis*. In January 1996, plaintiffs filed a cross motion for partial summary judgment as to the government's liability under the FLSA. Plaintiffs seek overtime compensation for the time spent traveling with their canine units on the ground that transporting their dogs to and from their principal place of employment constitutes compensable work. Plaintiffs contend that the Portal-to-Portal Act and *de minimis* doctrine do not apply to the canine handlers because they are under the agency's control during their commute, and as such, the time constitutes compensable work. Plaintiffs point to three factors which demonstrate control: (1) radio check-in and check-out is allegedly required at the beginning and end of the commute; (2) the INS imposes restrictions on travel to and from work; and (3) the INS requires the agents to drive specially equipped vehicles.

## DISCUSSION

I. Summary Judgment

■ Summary judgment is appropriate when there exist no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Campbell v. United States*, 2 Cl.Ct. 247, 249 (1983). A genuine issue of material fact is one that would change the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court does not weigh the evidence; it only determines questions of law based upon undisputed facts. Disputes over facts which are not outcome determinative, however, will not preclude the entry of judgment. *Id.* at 248, 106 S.Ct. at 2510. When the moving party has met its burden of showing entitlement to judgment as a matter of law, the burden shifts to the non-moving party to provide facts establishing that a genuine issue for trial exists, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986), and the non-moving party may not discharge its burden by cryptic, conclusory, or generalized responses. *See Willetts v. Ford Motor Co.*, 583

F.2d 852, 856 (6th Cir.1978); *Tunnell v. Wiley,* 514 F.2d 971, 976 (3rd Cir.1975).

When the parties have filed cross motions for summary judgment, as in this case, the court must evaluate each party's motion on its own merits. The court's duty to decide whether summary judgment is appropriate is not abrogated by the fact that both parties argue in favor of summary judgment and allege that there are no genuine issues of fact for trial. *Prineville Sawmill Co. v. United States,* 859 F.2d 905, 911 (Fed. Cir.1988) (citing *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1390–91 (Fed.Cir.1987)); *see also Bataco Indus., Inc. v. United States,* 29 Fed.Cl. 318, 322 (1993), *aff'd,* 31 F.3d 1176 (Fed.Cir.1994). Summary judgment will not necessarily be granted to one party or another simply because both parties have so moved. *Corman v. United States,* 26 Cl.Ct. 1011, 1014 (1992) (citing *LewRon Television, Inc. v. D.H. Overmyer Leasing Co.,* 401 F.2d 689, 692–93 (4th Cir. 1968), *cert. denied,* 393 U.S. 1083, 89 S.Ct. 866, 21 L.Ed.2d 776 (1969)). Cross-motions are no more than a claim by each party that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not establish that if one is rejected the other is necessarily justified. *Rains v. Cascade Indus., Inc.,* 402 F.2d 241, 245 (3d Cir.1968); *Bataco,* 29 Fed.Cl. at 322. The court must evaluate each party's motion independent of the other, and resolve all reasonable inferences against the party whose motion is under consideration. *Mingus Constructors,* 812 F.2d at 1391. In the present case, the court finds no genuine issues of material fact which preclude summary judgment.

II. The History of the Fair Labor Standards Act and the Portal-to-Portal Act

The FLSA was enacted in response to a congressional finding that some industries, engaged in commerce, maintained labor conditions which were detrimental to a minimum standard of living necessary for health, efficiency, and the general well-being of workers. 29 U.S.C. § 202(a). The Act attempts to eliminate unfair labor practices without substantially curtailing employment or earning power. 29 U.S.C. § 202(b). The Act, which became applicable to federal employees on May 1, 1974, requires that employees be compensated for work performed. This includes payment for overtime "at a rate not less than one and one-half times the regular rate at which [the employee] is employed" for working in excess of forty hours per week. 29 U.S.C. § 207(a)(1). The FLSA, however, does not clearly define what types of activity qualify as work under the statute. In the decade following its enactment, the Supreme Court decided several cases in which it elaborated on the types of "work" that constituted compensable activity under the Act.

In *Tennessee Coal, Iron & R.R. v. Muscoda Local No. 123,* 321 U.S. 590, 598, 64 S.Ct. 698, 703, 88 L.Ed. 949 (1944), the Supreme Court held that time spent by iron-ore miners traveling in underground mines to and from the working face constituted "work" for which compensation must be paid under the FLSA. The Court applied a common definition of work in reading the FLSA. It held that "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business" constituted "work." *Id.* Similarly, the Supreme Court held in *Jewell Ridge Coal Corp. v. Local No. 6167,* 325 U.S. 161, 65 S.Ct. 1063, 89 L.Ed. 1534 (1945) that bituminous coal miners engaged in underground travel from the mine portal to the working face were engaged in "work" as defined by the FLSA because the three elements of work as defined in *Tennessee Coal* were met. These elements are: physical or mental exertion; exertion controlled or required by the employer; and exertion pursued necessarily and primarily for the benefit of the employer and his business. *Id.* at 164–65, 65 S.Ct. at 1065–66. The Court found the activities in question to be work in spite of contrary custom and collective bargaining agreements which held that travel time was generally not viewed as worktime. *Id.* at 166–67, 65 S.Ct. at 1066–67.

In *Anderson v. Mount Clemens Pottery Co.,* 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), the Supreme Court ruled that the time spent by employees of a pottery

factory walking to work once on their employer's premises, and after having to punch time clocks, put on aprons and overalls, and prepare equipment before starting their job, constituted work within the scope of the FLSA. The Court held that the "statutory workweek includes all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace" and that these activities are all compensable under the FLSA, especially since the activities were under the complete control of the employer and were pursued primarily for the employer's benefit. *Id.* at 690–91, 66 S.Ct. at 1193–94.

Following the decision in *Anderson,* numerous suits were filed throughout the country seeking compensation based on the criteria of "work" as set forth in that and previous cases. In response to this flood of litigation arising from the Supreme Court's interpretive definition of "work," Congress passed the Portal-to-Portal Act of 1947. 29 U.S.C. §§ 251–262. In a statutory policy declaration, Congress found that the FLSA, as interpreted by the Supreme Court, caused unexpected liabilities for employers which resulted in substantial burdens on commerce. 29 U.S.C. § 251. The fundamental purpose of the Portal-to-Portal Act was to remedy this situation by tightening the definition of "work" under the FLSA in order to limit the jurisdiction of the courts.

 The Portal-to-Portal Act amended the FLSA by defining certain activities as not constituting compensable work within the meaning of the FLSA. The objective was to relieve employers from liability for preliminary and postliminary activities which were thought to fall outside the conventional expectations of compensation. Overall, the Portal-to-Portal Act was designed "to meet the existing emergency" which stemmed from the flood of claims filed after *Anderson* which, if allowed under the guidelines established in *Anderson,* would have created tremendous liabilities for employers and commerce in general. 29 U.S.C. § 251(a). The

Portal-to-Portal Act enumerates two types of noncompensable activities:

(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and

(2) activities which are preliminary to or postliminary to said principal activity or activities.

29 U.S.C. § 254(a). The statute explicitly states that time spent commuting to and from work is not compensable. Additionally, preliminary and postliminary activities are not compensable.[1] According to long-held canons of statutory interpretation, if the plain meaning of the language of a statute is clear, it will ordinarily be regarded as conclusive. *See, e.g., Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). However, determining the plain meaning is not a simple task. The Supreme Court has held that the function of a court in statutory interpretation is "to construe the language so as to give effect to the intent of Congress." *United States v. American Trucking Ass'ns,* 310 U.S. 534, 542, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940). The plain meaning of the words is followed if they sufficiently indicate the purpose of the statute.

As noted above, the purpose of the Portal-to-Portal Act was to narrow the definition of compensable work under the FLSA. Before the enactment of the Portal-to-Portal Act, Congress found "that the Fair Labor Standards Act of 1938 ... ha[d] been interpreted judicially in disregard of long-established customs, practices, and contracts between employers and employees, thereby creat[ing] wholly unexpected liabilities, immense in amount and retroactive in operation" and "that all of the foregoing constitutes a substantial burden on commerce and a substantial obstruction to the free flow of goods in commerce." 29 U.S.C. § 251(a). Thus, Congress intended to clearly define two types of noncompensable activity, i.e.: commuting

---

1. This case is concerned primarily with the first type of noncompensable activity. Many of the cases cited by plaintiffs in support of their position involve preliminary or postliminary activi-

ties and do not address the issue of commuting time, which has been specifically designated as noncompensable under § 254(a)(1) of the Portal-to-Portal Act.

time and work which was preliminary or postliminary to the principal employment activity.

The Supreme Court subsequently carved an exception to the Portal-to-Portal Act in 1956. Workers in a battery plant, using caustic and toxic materials, were compelled by health, hygiene and personal safety considerations to change their clothes before and after work and to shower in facilities which state law required the employer to provide. *Steiner v. Mitchell,* 350 U.S. 247, 248, 76 S.Ct. 330, 331, 100 L.Ed. 267 (1956). Under the Portal-to-Portal Act, these activities were, without question, noncompensable because they constituted activity preliminary or postliminary to the principal activity. *Id.* at 249, 76 S.Ct. at 331–32. However, the Supreme Court concluded that "activities performed either before or after the regular work shift, on or off the production line, are compensable" despite the Portal-to-Portal Act "if those activities are an integral and indispensable part of the principal activities ... and are not specifically excluded by Section 4(a)(1)." *Id.* at 256, 76 S.Ct. at 335 (referring to 29 U.S.C. § 254(a)(1) which defines commuting time as noncompensable).

■ Thus, the Supreme Court has stated an exception to the Portal-to-Portal Act. Preliminary and postliminary activities which are found to be an integral and indispensable part of the principal activities and which are not excluded explicitly by 29 U.S.C. § 254(a)(1) are compensable under the Portal-to-Portal Act. This exception is very narrow.

III. The Portal-to-Portal Act Exclusion Applies.

■ Defendant argues that plaintiffs' travel time with the dogs is not compensable because it is exempt under the Portal-to-Portal Act. This court agrees. A common-sense reading of the Portal-to-Portal Act, coupled with the narrow exception of the Supreme Court in *Steiner,* demonstrates that plaintiff's commute time is not compensable as a matter of law.

As already noted, the Portal-to-Portal Act was a legislative effort to curtail the number of claims seeking compensation under the Supreme Court's early reading of the FLSA. Congress, as a matter of policy, decided to limit the scope of compensable claims. In light of this background, this court is compelled to interpret the Portal-to-Portal Act to give effect to the purposes behind the legislation, as seen through the Act itself and its legislative history.

When viewed in this light, the actions defined in 29 U.S.C. § 254(a)(1) are separate, noncompensable activities from those cited in § 254(a)(2). Thus, preliminary and postliminary activities are to be considered apart from travel to and from work. The Supreme Court's holding in *Steiner* supports this conclusion. The Court there held that "integral and indispensable" activities were compensable even if performed "before or after the regular work shift" *unless* those activities "are not specifically excluded by Section 4(a)(1)." *Steiner,* 350 U.S. at 256, 76 S.Ct. at 335. Since "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities" are specifically excluded in that section, the *Steiner* exception does not apply to the facts of this case. 29 U.S.C. § 254(a)(1).

■ Plaintiffs, however, argue that they can be compensated for their commuting time if they demonstrate that they actually perform "work" during the time they commute. This argument is not persuasive. As a matter of law, in order for a preliminary or postliminary activity to be compensable under the Portal-to-Portal Act, it must be an integral and indispensable part of the principal activity. *Steiner,* 350 U.S. at 256, 76 S.Ct. at 335–36. This issue turns on the definition of what actions are an "integral and indispensable part of the principal activities." *Id.* As noted above, this concept must be interpreted narrowly in order to remain faithful to the underlying purposes of the Portal-to-Portal Act. "The authorities offer little guidance as to the meaning of the term 'principal activity or activities,' or how to distinguish non-compensable preliminary/postliminary activities. And the guidance that does exist tends to be circular." *Reich v. New York City Transit Auth.,* 45

**566**

F.3d 646, 649 (2d Cir.1995) (noting that this distinction stems from *Steiner* ).

Courts which have sought to apply the Supreme Court's legal analysis in *Steiner* have differed both as to the proper test to apply, as well as to the test results. For example, the U.S. Court of Appeals for the Eighth Circuit has held that the phrase "principal activity or activities" is to be read liberally when determining which preliminary and postliminary activities are an integral and indispensable part of the principal activity. *Barrentine v. Arkansas–Best Freight Sys., Inc.,* 750 F.2d 47, 50 (8th Cir. 1984), *cert. denied,* 471 U.S. 1054, 105 S.Ct. 2116, 85 L.Ed.2d 480 (1985). The Fifth Circuit announced that the test "is not whether the activities in question are uniquely related to the predominant activity of the business, but whether they are performed as part of the regular work of the employees in the ordinary course of business." *Dunlop v. City Elec., Inc.,* 527 F.2d 394, 400–01 (5th Cir.1976).

■ This court believes these interpretations to be overbroad, especially since the exception fashioned in *Steiner* narrowly construed the phrase "principal activity" and found only a limited exception, expressly compelled by health, hygiene and safety considerations. *Steiner* went to great lengths to emphasize that changing clothes and showering are not compensable under "normal" circumstances. *Steiner,* 350 U.S. at 249, 76 S.Ct. at 331–32. However, the Court reasoned that the workers' job in *Steiner* required exposure to toxic substances which remained on the workers' clothes and bodies. Therefore, they were compelled by circumstances, vital to health and hygiene, to change clothes and to shower in employer provided facilities. This was made necessary by the nature of the work performed, and was so closely related to the other duties performed by the employees as to be an integral part thereof. *Id.* at 249–51, 76 S.Ct. at 331–33. Therefore, the Court concluded that changing clothes and showering were an integral and indispensable part of the principal employment activity, but only because they were vital considerations essential to the safe performance of the workers' jobs.

*See also Reich,* 45 F.3d at 650 (noting that the Supreme Court found the activities in *Steiner* were integral and indispensable "given the high risks to employee safety"). Thus, normally noncompensable actions can be compensable only upon a showing that they are an integral and indispensable part of the principal activity and are also compelled by vital considerations, such as health or safety.

Since commuting time is normally noncompensable under the Portal-to-Portal Act, plaintiffs must demonstrate that commuting is not only a preliminary or postliminary activity which is performed as an integral and indispensable part of the principal activity (the *Dunlop* test), but must also demonstrate that it is compelled by vital considerations. This analytical framework is consistent both with the underlying principles of the Portal-to-Portal Act and *Steiner.*

This court does not believe that either part of the above test has been met by plaintiffs. Courts have differed as to whether or not the time spent transporting dogs is an integral and indispensable part of an officer's principal duties. In *Reich,* the Department of Labor sought compensation on behalf of New York City Transit Authority officers who patrolled the subways with canine units. The officers, as here, demanded overtime compensation for the time spent commuting with the dogs to and from work. The United States Court of Appeals for the Second Circuit agreed with the City of New York that "[t]he mere presence of a dog does not make the commute compensable." *Reich,* 45 F.3d at 652. Plaintiffs assert that more than commuting is involved. They claim that the restrictions placed on them, and the fact that they must perform some work, renders their commute distinguishable. If this argument were carried to its logical conclusion, plaintiffs would be able to claim that all time spent with their dogs was compensable. The Second Circuit in *Reich* found this proposition beyond belief and so does this court. This is obviously not what was intended by Congress or the Supreme Court. Other courts have agreed with *Reich.* "[C]ommon sense tells us that employees should not be compensated for doing what they would have

to do anyway—getting themselves to work." *Andrews v. DuBois*, 888 F.Supp. 213, 218 (D.Mass.1995). As *Andrews* noted, even though transporting the dogs indirectly benefits the employer, all dog care provided by the officers benefits the employer. This does not mean that the employees are entitled to compensation around-the-clock. *Id.* See also *Levering v. District of Columbia*, 869 F.Supp. 24, 29 (D.D.C.1994) (noting that merely providing a benefit to the employer cannot alone result in compensation).

In fact, there seems to be only one court which has held that time spent transporting dogs was compensable as an integral and indispensable part of an officers' principal duties. *Graham v. City of Chicago*, 828 F.Supp. 576 (N.D.Ill.1993). *Graham* noted that "*Steiner* left much room for disagreement as to what is integral to an employee's principal activities." *Id.* at 580. Referencing *Steiner*, the *Graham* court went on to declare that "[a]ctivities that primarily benefit the employer are not preliminary or postliminary, regardless of when or where those activities take place." *Id.* at 581. However, this conclusion ignores a crucial element of the Supreme Court's decision in *Steiner*. As discussed earlier, the decision in that case was largely motivated by "vital considerations of health and hygiene." *Steiner*, 350 U.S. at 248, 76 S.Ct. at 331. This element is missing from the present case. In addition, *Graham* arose at a time when "the issue of whether transporting animals to and from work is compensable ha[d] not been squarely addressed." *Graham*, 828 F.Supp. at 579. Since that time, the majority of courts addressing this issue have held such time to be noncompensable. This court agrees with those decisions.

Plaintiffs further contend that regulations addressing home-to-work travel support their position. They assert that the high level of INS control leads to compensation. However, reliance on 5 C.F.R. § 551.401 and § 551.422(a)(2) (1996) is misplaced.[2] Both of these sections, which plaintiffs cite to support

the idea that their commuting time is compensable, are modified by 5 C.F.R. § 551.422(b) which states that "[a]n employee who travels from home before the regular workday begins and returns home at the end of the workday is engaged in normal "home to work" travel; such travel is not hours of work." Thus, since plaintiffs' activities are not considered "work," the critical issue is not whether the plaintiffs are under the direction and control of the INS, but, as stated earlier, whether or not the activities being performed by the agents are an integral and indispensable part of their principal activities and are also compelled by vital considerations.

Neither does Federal Personnel Manual Letter 551–10 (1976) ("FPM Letter") support plaintiff's position. While this letter does address situations in which travel from home-to-work may be deemed compensable, none of the examples provided are analogous to the present case. The general rule is that normal home-to-work travel is not compensable. *Id.* at 2, 6. Five exceptions are spelled out in the letter. Four of these involve situations where the employee either transports other employees to work or is himself transported to work as a passenger after reporting to a designated meeting place. None of these are applicable to the instant case. The only remaining instance where the FPM letter suggests an entitlement to compensation for home-to-work travel is where the "employee drives a government vehicle home (as a requirement of the employing agency) to respond to emergency calls immediately from his/her home." *Id.* This exception is also inapplicable. Plaintiffs are not provided with government vehicles for the purpose of responding to emergency calls. As defendant notes, other border patrol agents, who are not canine handlers, are also subject to emergency calls at home but are not assigned vehicles. Although plaintiffs may be required to respond to emergency calls from home, that is not the primary reason why the government vehicles are as-

---

2. 5 C.F.R. § 551.401 states in relevant part that "[a]ll time spent by an employee performing an activity for the benefit of an agency and under the control or direction of the agency is 'hours of work.'" 5 C.F.R. § 551.422(a), headed "Time

spent traveling" states that "[t]ime spent traveling shall be considered hours of work if . . .: (2) An employee is required to drive a vehicle or perform other work while traveling."

signed to them.[3] According to plaintiffs, canine handlers are assigned government vehicles in order "to transport the canine to and from official government business." (Pls.' Proposed Findings of Uncontroverted Fact at 2, ¶ 7.) Thus, the FPM letter provides no support for plaintiffs' position.

The FPM letter also distinguishes *Knowles v. United States,* 29 Fed.Cl. 393 (1993), which plaintiffs cite for support. *Knowles* dealt with employees who were required to transport fellow employees to and from work. Such activity is recognized as compensable by the FPM letter. However, as *Knowles* noted, such activity "plainly differs from merely riding as a passenger or even driving oneself.... The burden of that obligation [driving others] is commensurately greater when one is responsible for the safety of others." *Id.* at 394. Transporting the dogs cannot be compared to transporting coworkers. It is more comparable to transporting other necessary equipment. As the court stated in *Levering,* "[o]fficers are required to transport their weapons to and from work, but they are not entitled to compensation for travel time by virtue of that requirement." *Levering,* 869 F.Supp. at 28.

Plaintiffs, however, cite two Tenth Circuit cases for the proposition that transporting needed equipment is compensable. Neither of the cases relied on by plaintiffs involve commuting from home-to-work, the issue in the present case. Therefore, although not necessary to this court's determination, the rulings in the Tenth Circuit cases are fully consistent with the instant case. *See Crenshaw v. Quarles Drilling Corp.,* 798 F.2d 1345 (10th Cir.1986); *D A & S Oil Well Servicing Inc. v. Mitchell,* 262 F.2d 552 (10th Cir.1958).

Plaintiffs emphasize the degree of control exercised by the INS over their commutes. Examples of this control cited by plaintiffs include the fact that the vehicles cannot be used for personal errands during the commute, the fact that they monitor the radio while traveling, and the requirement to check-in and out by radio (discussed *infra* ).

These facts, however, are not dispositive. As already discussed, the issue is not control, but rather whether or not the activities in question are integral and indispensable and are compelled by vital considerations. Control over the agents is merely one factor to consider in this analysis. In fact, the very cases that plaintiffs cite for support make the point that control is not determinative. The *Levering* court declared that control similar to that demonstrated in *Graham* would "*strengthen*" their claim for compensation," not lead automatically to compensation. 869 F.Supp. at 29 (emphasis added). Plaintiffs also cite the Second Circuit as stating that "[t]he more the preliminary (or postliminary) activity is undertaken for the employer's benefit, the more indispensable it is to the primary goal of the employee's work, and the less choice the employee has in the matter, the more likely such work will be found to be compensable." *Reich,* 45 F.3d at 650. Reliance on this statement is misplaced. As discussed above, this court has determined that commuting cannot properly be considered compensable unless such time is an integral and indispensable part of the principal activities and is compelled by vital considerations. This is the most consistent reading of the Portal-to-Portal Act, its legislative history and the Supreme Court in *Steiner.*

▮ Reference is also made by plaintiffs to *Treece v. City of Little Rock, Ark.,* 923 F.Supp. 1122 (E.D.Ark.1996). However, that case relies to a large extent on the test utilized by the Fifth Circuit in *Dunlop,* a test that this court has rejected. Further, the portion of the opinion that plaintiffs cite for support is concerned with compensation for cleaning, fueling and maintenance of the officer's cars. The *Treece* court did not decide the issue of compensability for travel time. Plaintiffs also point to the requirement that officers check-in and check-out by radio when they enter their vehicles to transport their canines as evidence of control which supports their claim. While this fact is disputed by defendant, the court will, for the purposes of discussion only, assume this to

---

**3.** This court is not addressing the issue of compensation for time spent driving to and from emergency calls as that is not a part of 'normal'
commuting time. That issue is not before the court.

be true as it is not a material fact. The check-in and check-out requirement can be analogized to punching in and out on the time clock in *Anderson*. As noted earlier, the Portal-to-Portal Act was enacted in direct response to this and other similar cases in order to make such activities noncompensable. H.R. 48, 80th Cong., 1st Sess. (1947). Therefore, the court finds that the Portal-to-Portal Act holds check-in and check-out duties as noncompensable preliminary and postliminary activities. Thus, even if the procedures are required of the agents, the issue is immaterial.[4]

Overall, the fact that the agents are subject to INS regulations while commuting is not a controlling factor. It is merely one element to examine when determining if the commute is compensable. As discussed above, the time spent by agents commuting with their dogs is not an integral and indispensable part of their primary work activities. Further, even if the commute is integral and indispensable, it must be compelled by vital considerations such as those recognized in *Steiner* in order to fall outside the Portal-to-Portal Act's designation of commuting time as not compensable. 29 U.S.C. § 254(a). For these reasons, the commute time is not compensable at all.[5]

## SUMMARY

The Portal-to-Portal Act, its legislative history, and the Supreme Court in *Steiner* all state that commuting time is normally not compensable. Any exceptions to the general rule are narrow ones. It is for Congress, and not this court, to broaden the coverage of the Act if so desired. Plaintiffs assert that the test to be applied involves an analysis of the control and direction applied by the INS,

as well as examining who benefits from the activities in question. While this is the test normally applied to determine if preliminary and postliminary activities are compensable because they are integral and indispensable to the primary activity, it is not the proper test to apply when determining if commuting time is compensable. In such a case, following the intentions and plain meaning of Congress, the Portal-to-Portal Act is to be read much more narrowly. Thus, commuting time is only compensable if it is an integral and indispensable part of the principal activities and is also compelled by vital considerations. This court holds that the commutes involved in this case do not meet this test. It should be noted that this court does not find that plaintiffs do not have a right to be compensated for any work related to the care of their dogs that may occur during the commute, an issue not before the court at this time.

## CONCLUSION

Based on the foregoing discussion, defendant's motion for partial summary judgment is granted, and plaintiffs' cross motion for partial summary judgment is denied. The parties shall confer and file a joint status report within 30 days of this Order to inform the court of the remaining issues to be resolved and recommend a future course of action. No costs.

**IT IS SO ORDERED.**

---

4. Assuming *arguendo* that the radio check-in and check-out procedures do qualify as work and are compensable, the *de minimis* doctrine, discussed *infra* in footnote 6, would surely apply.

5. Plaintiffs and defendant debate whether or not the work performed by the agents qualifies as *de minimis*. This argument is irrelevant. The *de minimis* doctrine states that, "[a]s a general rule, employees cannot recover for otherwise compensable time if it is *de minimis*." *Lindow v. United States*, 738 F.2d 1057, 1062 (9th Cir.1984). The doctrine only applies if the activities in question are otherwise compensable. As plaintiffs cor-

rectly point out, the question of whether or not the activities qualify as work is totally separate from the question of whether or not the time spent performing the activities is *de minimis*. Therefore, since this court holds that the canine handlers are not entitled to compensation for time spent commuting with their dogs, the court does not have to inquire if the time involved is *de minimis*. However, as mentioned earlier, if plaintiffs seek compensation for work performed in caring for their dogs during the commute, the doctrine may apply.