Martin M. AGUILAR, et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 93–561C.

United States Court of Federal Claims.

Aug. 15, 1997.

Thomas A. Woodley (Gregory K. McGilli-vary of counsel), Washington, DC, for plaintiffs.

Hillary A. Stern, with whom were Acting Assistant Attorney General Frank W. Hunger and Director David M. Cohen, Washington, DC, for defendant.

## OPINION

MOODY R. TIDWELL, III, Judge.

This case is before the court on the parties' second set of cross motions for summary judgment, filed in response to this court's decision of October 7, 1996. For the reasons set forth below, the court grants defendant's motion for summary judgment, and denies plaintiffs' motion. Oral argument is not deemed necessary.

## FACTS

As noted in this court's October 7, 1996 decision, plaintiffs are either current or former employees of the Immigration and Naturalization Service ("INS"), who are or were engaged as border patrol agents and canine handlers. *Aguilar v. United States,* 36 Fed. Cl. 560 (1996). Plaintiffs' duties require them to transport their dogs to and from their principal place of employment and to kennel their dogs at their residences. The government provides the agents with specially marked and equipped government vehicles to transport the dogs. The agents are prohibited from making any personal use of the government vehicles during their travel to and from home or assigned duty points.

The court's October 7, 1996 decision was in response to plaintiffs' September 1993 suit

against the United States seeking back pay and other compensation under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201–219 (1994) (FLSA or Act), for, among other things, transporting the dogs. Defendant filed a motion for partial summary judgment in December 1995 on the ground that the FLSA does not require the government to compensate border patrol canine handlers for time spent commuting to and from work with their assigned canine units. In January 1996, plaintiffs filed a cross motion for partial summary judgment as to the government's liability under the FLSA. Plaintiffs sought overtime compensation for the time spent traveling with their canine units, arguing that transporting their dogs to and from their principal place of employment constitutes compensable work. This court agreed with defendant's position and found that plaintiffs' commuting time is exempt from the FLSA's compensation requirements based on the Portal–to–Portal Act of 1947, 29 U.S.C. §§ 251–262 (1994) ("Portal–to–Portal Act"). *Aguilar,* 36 Fed. Cl. at 560.

At the conclusion of this court's opinion in *Aguilar,* the issue of whether plaintiffs had a right to compensation for actual work performed during the commute, with respect to the care of their dogs—as opposed to the commute itself—was left open. *Aguilar,* 36 Fed. Cl. at 569. On January 6, 1997, plaintiffs filed a "memorandum of law regarding remaining issues to be decided." In an order dated March 4, 1997, at the request of the parties, plaintiffs' memorandum was deemed a motion for summary judgment. Defendant filed a response on March 26, 1997, which was supplemented on April 1, 1997. These cross motions incorporate the sections of the parties' previous summary judgment motions dealing with the *de minimis* doctrine. The issue now before the court is whether the work performed by plaintiffs during the commute is compensable and, if so, whether the *de minimis* doctrine applies.

## DISCUSSION

### I. Summary Judgment

Summary judgment is appropriate when there exist no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Campbell v. United States,* 2 Cl.Ct. 247, 249 (1983). A genuine issue of material fact is one that would change the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court does not weigh the evidence; it only determines questions of law based upon undisputed facts. Disputes over facts which are not outcome determinative, however, will not preclude the entry of judgment. *Id.* at 248, 106 S.Ct. at 2510. When the moving party has met its burden of showing entitlement to judgment as a matter of law, the burden shifts to the non-moving party to provide facts establishing that a genuine issue for trial exists, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986), and the non-moving party may not discharge its burden by cryptic, conclusory, or generalized responses. *See Willetts v. Ford Motor Co.,* 583 F.2d 852, 856 (6th Cir.1978); *Tunnell v. Wiley,* 514 F.2d 971, 976 (3d Cir.1975).

When the parties have filed cross motions for summary judgment, as in this case, the court must evaluate each party's motion on its own merits. The court's duty to decide whether summary judgment is appropriate is not abrogated by the fact that both parties argue in favor of summary judgment and allege that there are no genuine issues of fact for trial. *Prineville Sawmill Co. v. United States,* 859 F.2d 905, 911 (Fed.Cir. 1988) (citing *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1390–91 (Fed. Cir.1987)); *see also Bataco Indus., Inc. v. United States,* 29 Fed. Cl. 318, 322 (1993), *aff'd,* 31 F.3d 1176 (Fed.Cir.1994). Summary judgment will not necessarily be granted to one party or another simply because both parties have so moved. *Corman v. United States,* 26 Cl.Ct. 1011, 1014 (1992) (citing *LewRon Television, Inc. v. D.H. Overmyer Leasing Co.,* 401 F.2d 689, 692–93 (4th Cir. 1968), *cert. denied,* 393 U.S. 1083, 89 S.Ct. 866, 21 L.Ed.2d 776 (1969)). Cross-motions are no more than a claim by each party that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not establish that if one is

rejected the other is necessarily justified. *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir.1968); *Bataco*, 29 Fed. Cl. at 322. The court must evaluate each party's motion independent of the other, and resolve all reasonable inferences against the party whose motion is under consideration. *Mingus Constructors*, 812 F.2d at 1391. In the present case, the court finds no genuine issues of material fact which preclude summary judgment.

## II. Compensability of Work Performed During the Commute

Plaintiffs allege that a significant amount of work, related to the care of their dogs, occurs during their commutes. This work is broken down as follows:

 Each day, prior to leaving in the vehicle from home to the sector office the canine handlers are responsible for ensuring that the vehicle is clean, there is a bowl of water for the day and that the vehicle temperature is proper for travel. This takes from 10–15 minutes per workday.

 During the travel time approximately 4–5 times per month, the canine handlers have to stop and allow the dog to relieve himself. This takes about fifteen minutes each time it occurs.

 Approximately once a month, on average, the dogs are sick or relieve themselves inside the car. The handlers must find a location with water and clean this up. This takes approximately 30–45 minutes to clean up.

Pl.'s Supplemental Proposed Findings of Uncontroverted Fact at 1–2. Defendant concedes that the time spent by plaintiffs performing actual work related to the care of the dogs during the commute is theoretically compensable. However, defendant argues that this is irrelevant because such time, if

any, falls under the *de minimis* doctrine and is therefore noncompensable. The court finds that work performed by plaintiffs during their commute is *de minimis*, and consequently, the issue of whether the work itself is compensable is not reached.[1]

## III. Applicability of the *De Minimis* Doctrine

 According to defendant, even if plaintiffs' activities constitute work that should have been compensated, something not conceded by defendant, such work would be *de minimis*. The *de minimis* doctrine was first explained by the Supreme Court in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946).

> The workweek contemplated by § 7(a) [of the Fair Labor Standards Act] must be computed in light of the realities of the industrial world. When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded. Split-second absurdities are not justified by the actualities of working conditions or by the policy of the Fair Labor Standards Act. It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved.

*Id.* at 692, 66 S.Ct. at 1195. Thus, the doctrine renders what is otherwise compensable work under the FLSA into noncompensable time by nature of the small amount of time involved.[2]

In an often-cited opinion by the Ninth Circuit, three factors were set forth as the test for determining if otherwise compensable time is to be considered *de minimis*. According to that opinion, courts should consider "(1) the practical administrative difficulty of recording the additional time; (2) the

---

**1.** Had the claimed work not been found *de minimis*, plaintiffs would be entitled to a trial in order to determine if the work performed during the commute was, in fact, a compensable activity for which they are entitled to payment. For plaintiffs to claim, however, that work such as ensuring the vehicle is clean and that there is a bowl of water available for their dogs—work performed *before* the commute begins—is compensable as work performed during the com-

mute, seems to be a case of barking up the wrong tree.

**2.** It is important to note that the *de minimis* doctrine does not dictate whether a set of activities are compensable under the FLSA. Instead, the doctrine categorizes activities deemed compensable based on independent factors as noncompensable due to their limited nature in the particular circumstances.

aggregate amount of compensable time; and (3) the regularity of the additional work." *Lindow v. United States*, 738 F.2d 1057, 1063 (9th Cir.1984). The court notes, however, that "[n]o rigid rule can be applied with mathematical certainty." *Id.* at 1062.

The court now looks at each of plaintiffs' "work" activities that form the basis for the claim of compensation. First is ensuring that the vehicles are clean, that there is a bowl of water for the dogs and that the car is at a temperature "proper" for travel. The first two of these activities are unrelated to plaintiffs' commuting time. These activities would obviously occur before (or arguably after) the commute itself. Time spent on these activities is not part of the calculation because only work performed in caring for the dogs during the commute is at issue.[3] As for ensuring that the car is a proper temperature for the dogs, even if this were to be considered work, a proposition that stretches the common understanding of that concept, it is hard to understand plaintiffs' claim that this takes any significant amount of time, let alone 10–15 minutes per workday.[4]

■ The second item of work performed during the commute involves allowing the dogs to relieve themselves 4–5 times per month for about 15 minutes each time. The only evidence presented on this issue consists of statements made in five of the nine sworn declarations submitted by plaintiffs.[5] These statements, rather than supporting plaintiffs'

claim, tend to demonstrate that such work is not regular and is not substantial. Four of the nine declarants made no mention of the need to perform this 'work'. Additionally, "the uncertainty of how often employees performed the tasks and of how long a period was required for their performance are also relevant" in determining if otherwise compensable time is to be considered *de minimis*. *Lindow*, 738 F.2d at 1063 (citations omitted). Of the declarants who do discuss this aspect of their commute, the frequency of the work ranges from 3–4 times per month for 15–20 minutes to 3 times a month for about 5 minutes. Two declarants failed to indicate how often this problem occurs and one did not indicate the length of time it takes for the agent to perform this work. One agent stated that at the beginning of the commute he drives to an open field to allow the dog to relieve himself. Overall, there is no degree of regularity in the performance of this function.[6]

Finally, plaintiffs claim that they must stop and clean their cars approximately once a month after their dogs become sick or relieve themselves during the commute and that this takes approximately 30–45 minutes. On this issue, only four of the nine declarants have offered any information. One declarant, whose dog was "of advanced age," stated that this occurred "about twice a month and took about an average of 15–30 minutes each time." Pl.'s Mem. of Law Regarding Remaining Issues to be Decided, App. at 3.

**3.** As plaintiffs' noted, the remaining issue to be decided is "the compensability of the care time for the dogs *during travel time.*" Pl.'s Mem. of Law Regarding Remaining Issues to be Decided at 1 (emphasis added).

**4.** At most, plaintiffs may have to start the car and allow it to cool or heat for a few minutes before beginning their commute. Such time is not necessarily spent working and does not require their attention or monitoring.

**5.** Fourteen declarations were submitted on January 24, 1996, as part of plaintiffs' initial complaint. The declarants whose statements are included in plaintiffs' current motion constituted nine of the fourteen original declarants. Some of the information in the declarations is inconsistent, but all of the statements seek to demonstrate plaintiffs perform work during their commutes. Since only the nine statements were

included with plaintiffs' current motion, these were the focus of the court's attention. None of the information submitted in the original declarations alters the analysis of this opinion in any way.

**6.** As defendant notes:

Unless plaintiffs are deliberately trying to add work activities to their commute that could otherwise be taken care of during the home care time for which they are already being compensated, it can be reasonably assumed that plaintiffs do not stop en route to allow their dogs to relieve themselves unless the dogs in some way signal a need to do so. Absent an unusual medical condition, it is difficult to believe that it takes a dog who has an urgent need to relieve itself, twenty minutes to do so. Def.'s Resp. to Pl.'s Mem. of Law Regarding Remaining Issues to be Decided at 3.

Another declarant, without indicating how often the event occurred, stated that it would add 15 minutes to the trip to clean the vehicle. Another person stated that it takes 45 minutes to clean up. As with the prior claim, there is no regularity to this work. "While cleaning time ... might support a request for a cleaning allowance, it is not clear how that damage and cleaning time justifies compensation for the time spent in travel." *Levering v. District of Columbia*, 869 F.Supp. 24, 30 (D.D.C.1994).

Overall, the three-part *Lindow* test has not been satisfied by plaintiffs. Each of the activities, if they even qualify as compensable work activities, does not occur on a regular basis. *See Lindow*, 738 F.2d at 1063. The administrative difficulties involved with tracking such time would be extremely difficult. As the Second Circuit found in a similar case, "[t]he task of recording the time spent in such duties, when they arise, might well exceed the time expended in performance of the duties." *Reich v. New York City Transit Authority*, 45 F.3d 646 (2d Cir. 1995). In addition, contrary to plaintiffs' claim that "the amount of time that these activities takes is consistent," the declarations indicate that the time spent on these activities varies widely. Pl.'s Mem. of Law Regarding Remaining Issues to be Decided at 6. It is clear, however, that for the most part, these activities do not take a great deal of time. Overall, any otherwise compensable work performed by plaintiffs during their commute, if any at all, is *de minimis* and therefore does not need to be compensated.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted, and plaintiffs' motion for summary judgment is denied. As all legal claims raised by plaintiffs have now been addressed and relief denied for each, the Clerk is directed to enter judgment for defendant.

**IT IS SO ORDERED.**