Per Curiam:
This case was referred to Trial Commissioner Roald A. Hogenson with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 57(a). The commissioner has done so in an opinion and report filed on February 15,1968. Exceptions to the commissioner’s opinion, findings and recommended conclusion of law were filed by plaintiffs and the case has been submitted to the court on oral argument of counsel and the briefs of the parties. Defendant has filed no *352 exception to the commissioner’s recommendation that its counterclaim be dismissed. Since the court agrees with the opinion, findings and recommended conclusion of law of the commissioner, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case.* Therefore, plaintiffs are not entitled to recover and their petition is dismissed. Defendant’s counterclaim is dismissed without prejudice.
OPINION OP COMMISSIONER
Hogenson, Commissioner:
The 35 plaintiffs in Count I are wage board employees engaged in plant operations and maintenance at the Department of Agriculture Plum Island (N.Y.) Animal Disease Laboratory (PIADL), and bring suit to recover overtime compensation under the Federal Employees Pay Act of 1945,59 Stat. 295,297. They claim that the nature of their work required them to be on duty constantly throughout their 8%-hour shifts, so that they could eat only while also performing some duty, and did not have available a properly noncompensable 30-minute lunch period. Defendant’s position, on the other hand, is that their duties were such that they could and did relieve themselves from work for a 30-minute lunch period, as they were directed to do, and therefore only 8*4 hours of their 8%-hour shifts are compensable.
Plaintiffs under Count I also seek to be compensated for their daily travel time from Plum Island back to Orient Point, Long Island, a 20-minute trip on government furnished vessels. Plum Island is located about 1 mile easterly of the eastern tip (Orient Point) of the north fork of Long Island. At present only the trip from Orient Point to Plum Island at the beginning of each shift is included in the shift and compensated. Recovery is sought under amendments to the Federal Employees Pay Act of 1945, 68 Stat. 1109, 1110, on the ground that the travel is carried out under arduous conditions.
*353 Tbe eight plaintiffs in Count II are vessel employees who operate tbe vessels referred to in tbe second part of Count I. Tbey also are wage board employees, and seek overtime compensation under § 202(8) of tbe Classification Act of 1949, 63 Stat. 954, 955, on tbe basis that maritime employees on vessels are and were generally paid for time spent eating meals. Tbey also claim tbat tbe nature of tlieir work required them to be on duty constantly throughout their shifts, so tbat they did not have a properly noncompensable lunch period, and are entitled to recover overtime compensation on that theory.
Each plaintiff generally worked 40 hours of straight time per week during the respective claim periods, irrespective of the lunch periods and travel time in dispute. The trial of this case was limited to the issues of law and fact relating to the right of plaintiffs to recover, reserving the determination of amounts of recovery, if any, for further proceedings.
The plaintiffs involved in Count I are stationed in four buildings on Plum Island, laboratories 101 and 257, decontamination building 102, and steam plant 103. Their functions were basically to inspect, maintain, and repair the equipment in their buildings, and to operate the decontamination, heating, and other equipment. Most of this work was a 24-hour a day operation, and consequently the jobs in each building were manned in shifts, with a 45-minute overlap at each end to insure continuity. The shifts were as follows:
Shift 1: 12 midnight to 8:45 a.m.
Shift 2: 8:00 a.m. to 4:45 p.m.
Shift 3: 4:00 p.m. to 12:45 p.m.
Shift crews were rotated among the shifts, so that each crew worked each shift over a 3-week cycle. This work was done both by the employees assigned to one of the shift crews (shift workers) and also by employees who worked only the regular 8:00 a.m. to 4:30 p.m. day shift (day workers). Plaintiffs are all shift workers.
Before the claim period, shift workers were paid for the entire shift, 8 hours at regular rates and three-fourths of an hour at overtime rates, with % hour per shift treated as *354 scheduled overtime. Applicable Department of Agriculture regulations required that regular or scheduled overtime be approved in advance by the Personnel Division of the Agricultural Pesearch Service, whereas irregular or unscheduled overtime had to be approved by the PIADL director.
Effective May 31, 1959, as approved by the Personnel Division, the shift workers, including plaintiffs, were notified that they were to take a 30-minute lunch period each day, and consequently would be paid only % hour of daily overtime. No specific lunch times were set; the men were told that they were expected to relieve each other. A prime motive for this step was to reduce operating costs at PIADL. It is this deleted half hour for which plaintiffs are seeking to recover overtime pay; and the claim period begins with the time of deletion. On September 10, 1959, notices posted in each building set out 90-minute periods in the middle of each shift, within which the half-hour lunch periods were to be taken. On March 12, 1960, each shift worker in each shift was assigned a specific half hour in which to take his lunch period. This marked the end of the claim period.
Subsequent to the claim period the shift workers performed the same work as they had performed before and during the claim period, and received the same pay they had received during the claim period, 8 hours regular and %-hour overtime per day. The only substantial difference was that during the claim period, the workers were not assigned specific lunch times, whereas after the claim period they were.
The shift workers in all buildings usually ate together; during the day, the day workers often ate with them. This was the case before, during, and after the claim period, with only slight variations in some buildings for short periods immediately after May 31, 1959 and March 12, 1960, when there was some staggering of eating periods.
The men in buildings 101, 102, and 257 always ate within the buildings, because they would have had to take decontamination showers to leave them. The men in building 103 often ate outside in the summer. There was a cafeteria on the *355 island, but it was too far away even for the men in 103, who didn’t have to shower out of the building. During the day, when it was open, the men could and did occasionally order meals brought over from it. Eating facilities in all the buildings were rudimentary; the men essentially were eating in workrooms, provided with a table, hotplate and refrigerator.
Although the plants were operating 24 hours a day, the laboratories and the decontamination and steam facilities maintained a slower pace during the night, when the shift workers had to perform their duties unassisted by the day workers. These duties did not entail constant or continuous work. Most of the work, such as gauge readings, equipment checks, cleaning, and most repairs, did not have to be done at a particular time, but could be delayed at least for the length of a lunch period. Plaintiffs in all these buildings could easily have taken a half-hour lunch period, as directed, and the credible evidence is that they did.
Wage board employees are not entitled to be paid for periods set aside for eating purposes, provided that this non-compensated time meets the standard succinctly stated in Bantom v. United States, 165 Ct. Cl. 312, 320 (1964), cert. denied, 379 U.S. 890, as follows:
* * * [A]n employee is not entitled under the Federal Employees Pay Act to compensation for time set aside for eating, even where the employee is on a duty status and such túne is, therefore, subject to possible interruption. Compensation is available only if it is shown that substantial official duties were performed during that period. * * *
Plaintiffs have failed to make the required showing. See Armstrong v. United States, 144 Ct. Cl. 659 (1959), cert. denied, 361 U.S. 825.
The shift workers’ second claim under Count I is for overtime compensation for the time spent in travel from Plum Island back to Orient Point at the end of each shift. This claim is for the period from December 8, 1959, to the date of judgment. If the trip is delayed, the workers are kept in *356 a pay status until transportation is available. No work is performed on these trips.
During the claim period the trips were made either on a 65-foot T-boat, or a 38-foot picket boat, or a similar vessel, owned and operated by the Department of Agriculture. Each boat was inspected by the Coast Guard. It was not overcrowded during the trips, and everyone usually had a seat. Women working on Plum Island often used the same boat. They wore the clothes they would normally wear to an office or a laboratory.
The stretch of water that had to be traversed is called Plum Gut. It has a tidal rip which causes water turbulence, but apparently the area of the rip can most often be avoided. Since Plum Gut is sheltered from the open sea except in two specific directions, it is generally calm. In the past, school children living on Plum Island made daily crossings to and from Plum Island on comparable vessels, and their parents did not consider the trips dangerous or in any way hard on the children. A Coast Guard Lieutenant Commander testified that he did not think Plum Gut demanded more than routine caution. Of course, the weather and the seasons made the trips hazardous at times, but the boat operators could and did cancel trips if they believed there was danger.
Plaintiffs urge that these trips are hazardous and performed under arduous conditions, and therefore compensable under § 204 of the Federal Employees Pay Act Amendments of 1954,68 Stat. 1109,1110:
For the purposes of this Act, time spent in a travel status away from the official-duty station of any officer or employee shall be considered as hours of employment only when (1) within the days and hours of such officer’s or employee’s regularly scheduled administrative workweek, including regularly scheduled overtime hours, or (2) when the travel involves the performance of work while _ traveling or is carried out under arduous ■conditions.
Prior to September 30, 1963, there were no existing regulations of the Department of Agriculture or the Agricultural Research Service, authorizing payment of compensa *357 tion to employees for time spent in travel outside of hours of employment. On that date, Administrative Memorandum 402.2 was issued by the Agricultural Research Service, reissued with amendments on March 22, 1965. The pertinent text of these regulations is set forth in findings 42 and 43. They authorize compensation for travel time when the travel is performed under “considerable strain” or “arduous conditions.” The travel in issue in this case cannot be considered performed under considerable strain or under hazardous or arduous conditions.
In Ahearn v. United States, 142 Ct. Cl. 309, 313 (1958), firefighters manning island firestations had to take half-hour boat rides each way. Claiming under § 201 of the Federal Employees Pay Act of 1945, they contended that this travel was employment time, and cited Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123, 321 U.S. 590 (1944), as do plaintiffs here. The court held:
* * * We do not think this case is apposite. It was there decided that dangerous underground travel by iron miners to and from mine workings wholly within the mines, in cars furnished and operated by the mine owners and under their supervision and control, was compen-sable under the Fair Labor Standards Act. The miners checked in at the opening to the mine on the surface of the ground; from there they were required by the owners to ride in ore cars or other cars to a platform about two miles from their place of work and to walk the rest of the way. This journey from the checking in place, all on the owner’s property, was a necessary incident to their employment.
The facts of this case are quite different. The trip here was not exclusively on the owner’s property; it was made before reporting for work; it was not required by defendant, although it was the only way they could get there, and it involved no more risk than the travel to and from work performed by any employee. The Supreme Court distinguished that case from a prior decision wherein pay was denied for travel by motorboat furnished by the employer to the work site. We think the time spent in this travel is no more compensable than the time spent by any employee in going from his home to his work.
*358 In Biggs v. United States, 152 Ct. Cl. 545, 287 F. 2d 908 (1961), Navy civilian employees were regularly employed at one location but on the days for which overtime was claimed they were detailed to work at a place about 25 miles, or an hour’s drive, away. The government provided buses, but the employees were free to use their own automobiles, if they desired. They were paid for the trip to the work location, but not for the trip back. They were wage board employees, and not covered by 5 U.S.C. § 912b, 68 Stat. 1109, 1110. However, the Department regulations set up the same standards (compensation for travel time) for wage board employees. (Thus their claim is the same as the plaintiffs here, at least in the period since September 30, 1963.) The court held that the travel was no more arduous than normal, everyday commuting and therefore not compensable.
In 33 Comp. Gen. 274 (1953), Forest Service firefighters were forced to travel 667 miles in a school bus with upright rigid seats built close together and low to the floor to accommodate school children. The trip took 18% hours, without a stopover. This trip was held to be travel carried out under arduous conditions and compensable as such.
Obviously, plaintiffs’ boat rides involved no such arduous conditions, and their travel was comparable to the noncom-pensable trips in the Ahearn and Biggs cases, supra.
The eight plaintiffs involved in Count II are boat employees who operated the PIADL vessels between Orient Point and Plum Island. Before and during the claim period, duty shifts were 7:00 a.m. to 6:00 p.m. and 6:00 p.m. to 2:00 a.m., on Sunday through Wednesday, and 7:00 a.m. to 3:00 p.m. and 3:00 p.m. to 2:00 a.m. the rest of the week. The crews were rotated among the shifts. During the claim period, and prior thereto, no specific times were designated for lunch periods, but the boat employees were told to take a 1-hour lunch period on each shift except the first shift on Sunday and Monday, when a half-hour lunch period was directed. On December 22, 1959, specific lunch times were designated, and this marks the end of the claim period.
The duties of the crew members were primarily connected with the boats, either in operation, maintenance, or repair. *359 They also performed some shore duties which required a de minimis part of their time. The boats carried the shift workers to and from Plum Island at the beginning and end of every shift, except for the trip over at 8:00 a.m. On that trip the day workers and shift workers usually went over together on a converted 200-foot LST operated by the New London Freight Lines. The boats also made other trips, as directed by the PIADL administration. They were almost always docked between 11:00 a.m. and 2:00 p.m. for periods at least as long as the scheduled lunch; boat operations caused only de minimis interference with the scheduled lunch periods. The maintenance and repair work, which did not have to be performed at any particular time and was not performed continuously, could have been scheduled so as to leave lunch periods free. After the claim period a 40-hour workweek proved sufficient time for the same men to perform the same duties as well as they had performed them during the claim period.
The boat crews are wage board employees under § 202(8) of the Classification Act of 1949, 63 Stat. 954, 955, as follows:
Sec. 202. This Act (except Title XII) shall not apply to—
$ * $ $ $
(8) officers and members of crews of vessels, whose compensation shall be fixed and adjusted from time to time as nearly as is consistent with the public interest in accordance with prevailing rates and practices in the maritime industry.
Plaintiffs contend that this requires them to be paid according to the practice of the maritime industry whereby no deduction is taken for meal periods during the tour of duty aboard the vessel. However, that practice refers to operations where the vessels are under way for longer periods than those involved here, and is not shown to apply in circumstances where maritime employees are almost always at dock during times designated for lunch periods. Plaintiffs have made no showing of prevailing maritime industry practices in situations comparable to their own. Consequently it cannot be said that the discretion inhering in the phrase “as *360 nearly as is consistent with the public interest” has been abused. Abbott v. United States, 138 Ct. Cl. 459, 463, 151 F. Supp. 929, 932 (1957).
Thus, it is concluded that the claims of plaintiff boat employees must be denied on both the maritime practice theory and on the grounds that, as in the case of the other plaintiffs, they could and did take the designated lunch periods free of work.

The opinions of Collins, Judge, concurring in part and dissenting in part, and Nichols, Judge, dissenting in part, follow the opinion of the trial commissioner which has been adopted by the court.