Jerry BOBO, et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 96–176C.

United States Court of Federal Claims.

April 18, 1997.

Thomas A. Woodley, Washington, D.C., for plaintiffs. Gregory K. McGillivary, Mulholland & Hickey, of counsel.

Hillary A. Stern, Washington, D.C., with whom was Assistant Attorney General Frank W. Hunger, for defendant.

## OPINION

MILLER, Judge.

This case is before the court on the parties' cross-motions for partial summary judgment.[1] The issue for decision is whether time spent by Immigration and Naturalization Service ("INS") border patrol agent canine handlers ("plaintiffs") commuting to and from work with their assigned canines is compensable under the Fair Labor Standards Act, 29 U.S.C. §§ 201–19 (1994) (the "FLSA"). Argument is deemed unnecessary.

## FACTS

Plaintiffs are current and former INS border patrol agent canine handlers whose principal duties include responding to immigration related calls requiring the aid of their canines, inspecting vehicles at official traffic checkpoints, and performing linewatch functions such as monitoring traffic, conducting transportation checks, and responding to sensors.[2] In furtherance of these efforts, the INS requires plaintiffs to commute with their assigned canine partners and furnishes plaintiffs with specially equipped vehicles that allow for canine transport. Each plaintiff must transport his/her canine in this vehicle. Plaintiffs cannot use the vehicles for personal matters. Rather, they must use these vehicles to transport the canines to and from their border patrol offices, work assignments, and residences. While commuting, plaintiffs must wear official border patrol uniforms.

Plaintiffs assert that the INS directs them to perform additional duties while commuting. For example, plaintiffs claim that they must monitor their radios, sign on their radios when they leave their residences at the beginning of the day and sign off and report their mileage upon returning, and respond to

---

1. Defendant refers to its motion as one for complete summary judgment in its briefs, and the court treats it as such.

2. Sensors are devices that are designed to alert the INS of the possible illegal entry into the United States of illegal immigrants. Sensors are scattered throughout remote areas near our nation's borders.

an incident whenever called during their commutes. Plaintiffs also claim that, while commuting, they are required to observe traffic, look for suspicious activity, conduct transportation checks, respond to sensors, assist other agencies with immigration-related problems, and care for their dogs. This care entails driving more cautiously to avoid injuring the dogs, stopping to allow the dogs to exercise and relieve themselves when necessary, and maintaining a comfortable air temperature for the animals.

Defendant's version of the facts differs drastically from plaintiffs'. Defendant maintains that plaintiffs are not required to perform any duties while commuting. Specifically, defendant asserts that during their commutes plaintiffs are not required to 1) monitor their radios; 2) sign on and off their radios; 3) perform linewatch functions; 4) observe traffic; 5) respond to sensors; or 6) assist other government agencies with immigration related problems.

Plaintiffs contend that they are entitled to compensation under the FLSA for their time spent commuting to and from work with their assigned canines in their government-owned vehicles. According to plaintiffs, such compensation is warranted because, while commuting, they are subject to numerous restrictions and are required to perform several activities that are an integral and indispensable part of the principal duties that they are employed as border patrol agents to perform. Defendant argues that the compensation plaintiffs seek is precluded by the Portal-to-Portal Act, 29 U.S.C. §§ 251–62 (1994) (the "Portal Act"). Defendant relies on provisions of the Portal Act exempting an employer from liability for failure to pay an employee for ordinary travel to work time and for activities that are "preliminary to or postliminary to" the "principal activity or activities" that the employee is engaged to perform. *Id.* § 254(a)(1), (a)(2). Alternatively, defendant claims that, even if the activities plaintiffs perform while commuting do not fall within the ambit of the Portal Act, the time spent engaged in those activities is *de minimis* and therefore noncompensable.

## DISCUSSION

### 1. *Summary judgment standards*

Summary judgment is appropriate when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. RCFC 56(c). Only disputes over material facts, or facts that might significantly affect the outcome of the suit under the governing law, preclude an entry of judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute about a material fact is genuine if the evidence would permit a reasonable jury to return a verdict in favor of the non-movant. *Id.* Both plaintiff and defendant, as the moving parties, have the burden of establishing that there are no genuine material issues in dispute and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

In resolving the cross-motions, the court cannot weigh the evidence and determine the truth of the matter on summary judgment. *Anderson*, 477 U.S. at 249, 255, 106 S.Ct. at 2510–11, 2513–14. Any evidence presented by the opponent is to be believed and all justifiable inferences are to be drawn in its favor. *Id.* at 255, 106 S.Ct. at 2513–14. To this end, each party, in its capacity as the opponent of summary judgment, is entitled to "all applicable presumptions, inferences, and intendments." *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1574 (Fed.Cir. 1984).

### 2. *The FLSA and the Portal Act*

The FLSA requires employers to compensate employees for all hours worked. 29 U.S.C. §§ 201–17; *see Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 602, 64 S.Ct. 698, 705, 88 L.Ed. 949 (1944) (stating that FLSA's purpose was to "guarantee[ ] compensation for all work ... engaged in by [covered] employees"). The FLSA also instructs employers to compensate employees at a rate of one and one-half times their regular pay whenever employees work more than 40 hours in one week. 29 U.S.C. § 207(a)(1). Failure to abide by the

FLSA subjects employers to liability. 29 U.S.C. § 216.

Because the courts interpreted the FLSA "in disregard of long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities," 29 U.S.C. § 251(a), Congress amended that statute in 1947 by enacting the Portal Act.[3] Section 4 of the Portal Act made the following activities noncompensable under the FLSA:

(1) walking, riding, or traveling to and from the actual place of performance of the employee's principal activity or activities which such employee is employed to perform, and

(2) activities which are preliminary to or postliminary to said principal activity or activities, which occur prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a)(1), (a)(2).

According to defendant, plaintiffs' commutes are noncompensable because section 254(a)(1) of the Portal Act relieves employers from paying employees for time spent "traveling" to and from work. Defendant also asserts that the Portal Act's compensation exception for activities that are "preliminary" or "postliminary" to employees' principal activities, 29 U.S.C. § 254(a)(2), also renders plaintiffs' commutes noncompensable. Alternatively, defendant argues that if plaintiffs' commutes are deemed compensable, any compensation should be limited to actual work performed by plaintiffs during their commutes, which is *de minimis*. Plaintiffs counter that they are engaged in activities that are integral or indispensable to their principal duties throughout their commutes to and from work. Hence, plaintiffs argue that their entire commute time is compensable and that the Portal Act's travel and preliminary/postliminary exceptions are inapplicable.

### 3. Case law construing the FLSA

The Supreme Court considered the Portal Act's impact on the FLSA in *Steiner v. Mitchell*, 350 U.S. 247, 76 S.Ct. 330, 100 L.Ed. 267 (1956). Employees in *Steiner* sought FLSA compensation for time spent changing clothes and showering at defendant's battery plant before and after their scheduled shifts. The court analyzed the compensability of these activities under the following framework: If showering and changing clothes before and after each shift was "an integral or indispensable part of the principal activities for which [the] covered workmen [w]ere employed," *id.*, at 256, 76 S.Ct. at 335, then such tasks would be considered principal activities and compensable, rather than preliminary or postliminary activities and noncompensable, regardless of whether the activities were performed before or after the employees' scheduled workdays. Against this backdrop the Court in *Steiner* held that because the employees' pre- and post-shift cleansing activities were necessary to protect themselves from the toxins that permeated defendant's plant, they were integral and indispensable to the employees' principal activities.[4] The Portal Act's prelim-

---

**3.** Congress enacted the Portal Act to counteract the Supreme Court's decision in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), which interpreted the FLSA to require employers to pay employees for activities such as opening windows, switching on lights, and walking to their work stations once inside their employers' gates but not yet on the clock. Responding to this decision, Congress found that

the [FLSA] has been interpreted judicially in disregard of long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities, immense in amount ... upon employers with the results that, if said Act as so interpreted ... [is] permitted to stand, (1) the

payment of such liabilities would bring about financial ruin of many employers ...; (4) employees would receive windfall payments ... of sums for activities performed by them without any expectation of reward beyond that included in their agreed rates of pay ...; and (10) serious and adverse effects upon the revenues of Federal, State, and local governments would occur.

29 U.S.C. § 251(a).

**4.** In *Steiner* the Supreme Court adopted the trial court's description of integral and indispensable activities. The Court noted:

[T]hese activities "are made necessary by the nature of the work performed"; that they ful-

inary/postliminary compensation exception was inapplicable, so that plaintiffs were entitled to FLSA compensation for their time spent showering and changing before and after their scheduled workdays.

The reasoning set forth in *Steiner* has been discussed in a spate of commute cases involving claims for compensation under the FLSA. *See Reich v. New York City Transit Auth.*, 45 F.3d 646, 652–53 (2d Cir.1995) (finding Portal Act exceptions inapplicable where actual dog-care work occurred during commutes, but precluding compensation for such work under *de minimis* doctrine); *Aguilar v. United States*, 36 Fed.Cl. 560, 566 (1996) (interpreting Portal Act to bar compensation for commutes); *Baker v. GTE North Inc.*, 927 F.Supp. 1104, 1117 (N.D.Ind. 1996) (finding commutes to and from work compensable), *rev'd*, 110 F.3d 28 (7th Cir. 1997); *Andrews v. DuBois*, 888 F.Supp. 213, 219 (D.Mass.1995) (refusing to compensate employees for transporting canines to and from work where employers did not require employees to perform any activities while commuting and finding dog care work *de minimis*); *Levering v. District of Columbia*, 869 F.Supp. 24, 29 (D.D.C.1994) (finding commutes noncompensable because no work performed during drives); *Knowles v. United States*, 29 Fed.Cl. 393, 394 (1993) (compensating government employees for time spent driving co-workers back and forth between work-sites and homes); *Graham v. City of Chicago*, 828 F.Supp. 576, 582 (N.D.Ill.1993) (finding commute to and from work with canines compensable under FLSA).

Despite their differing outcomes, these cases are instructive in articulating the factors that courts should consider in determining whether employees' activities, which occur outside their scheduled hours, are integral and indispensable or merely preliminary or postliminary to their principal duties. If employees' pre- and post-shift activities are integral and indispensable to their principal duties, these activities are compensable. *Reich*, 45 F.3d at 650; *Dunlop v. City Elec., Inc.*, 527 F.2d 394, 401 (5th Cir.1976); *Levering*, 869 F.Supp. at 28. If the pre- and post-shift activities are merely preliminary or postliminary to employees' principal duties, however, they are noncompensable. *Dunlop*, 527 F.2d at 397–98; *Graham*, 828 F.Supp. at 580. In making this integral/indispensable-versus-preliminary/postliminary inquiry, these cases consider: 1) whether the disputed activity primarily benefits the employer or is mainly performed for the employee's convenience; 2) whether the employer requires the employee to engage in the activity; and 3) whether a close relationship is present between the disputed activity and the employee's principal duties. As the Second Circuit explained in *Reich*,

> [t]he more the preliminary (or postliminary) activity is undertaken for the employer's benefit, the more indispensable it is to the primary goal of the employee's work, and the less choice the employee has in the matter, the more likely such work will be found to be [integral and indispensable to the employee's primary activities and therefore] compensable.

45 F.3d at 650; *see Dunlop*, 527 F.2d at 400–01 (assessing whether activities in dispute are "necessary to the [employer's] business" and whether they are "performed at the[ ] employer's behest and for the benefit of the [employer's] business").

In contrast to integral and indispensable duties, preliminary or postliminary tasks are defined as those activities that are performed primarily in the employee's own interests. Moreover, these activities are not required by the employer and are not "necessary for the performance of [the employee's] duties." *Dunlop*, 527 F.2d at 398;[5] *see Graham*, 828

---

fill "mutual obligations" between [employers] and their employees; that they "directly benefit" [employers] in the operation of their business[es], and that they "are so closely related to other duties performed by ... employees as to be an integral part thereof and are, therefore, included among the principal activities of said employees."

350 U.S. at 252, 76 S.Ct. at 333.

5. In *Dunlop* the Fifth Circuit articulated the preliminary and postliminary activities that Congress intended to remove from FLSA coverage in passing the Portal Act:

> Decisions construing the Portal–to–Portal Act in conjunction with the F.L.S.A. make clear

F.Supp. at 581 (characterizing preliminary or postliminary activities as those tasks "spent predominantly in the employees' own interests").

The court in *Reich* applied these factors to a case bearing some resemblance to the instant action. Defendant contends that it instructs the court to reject plaintiffs' compensation claims. In *Reich* New York Transit Authority canine handlers sought FLSA overtime compensation for time spent commuting with their employer-assigned canines. The Authority placed one restriction on plaintiffs' commutes—they could not use public transportation to take their dogs to and from work. *Reich*, 45 F.3d at 647. Plaintiffs asserted that this restriction, coupled with the time they spent tending to their dogs while commuting, rendered their entire commutes compensable. In reversing the district court and denying plaintiffs' compensation claims, the court noted that plaintiffs merely rode to work with their dogs in the back seat. *Id.* at 652. This finding supported the conclusion that the Portal Act's travel exception, 29 U.S.C. § 254(a)(1), rendered the bulk of plaintiffs' commutes noncompensable. *Id.* at 651–52. The court, however, ruled this Portal Act exception inapplicable to the actual dog-care work that plaintiffs performed while commuting. *Id.* at 652. Nonetheless, because plaintiffs devoted such little time to dog care while driving, the court concluded that these dog care services were noncompensable under the *de minimis* doctrine. *Id.* at 652–53.[6]

In addition to *Reich*, defendant cites Judge Tidwell's recent decision in *Aguilar*. *Aguilar* is discussed in detail herein because the decision emanates from the Court of Federal Claims, involves the same type of employee and agency, is brought and defended by the same counsel, and interprets the law differently than this judge in the instant case.

As plaintiffs in the present case, plaintiffs in *Aguilar* were INS border patrol agent canine handlers seeking FLSA overtime compensation for time spent commuting with their assigned canines. 36 Fed.Cl. at 562. Relying on the Portal Act provision removing normal commuting time from FLSA coverage, 29 U.S.C. § 254(a)(1), the court found plaintiffs' commutes noncompensable "as a matter of law." *Id.* at 565. The court grounded this holding on three main premises: 1) that the terms "principal activities" and tasks that are "integral and indispensable" to such activities must be narrowly construed; 2) that Portal Act subsections (a)(1) and (a)(2), which remove commuting time and preliminary and postliminary activities from FLSA coverage, deal with separate and distinct activities, the compensability of which must be analyzed and determined under different tests; and 3) that the activities plaintiffs performed while commuting would have been compensable under the FLSA had plaintiffs established that they were an integral and indispensable part of plaintiffs' principal activities and were compelled by "vital considerations." *Id.* at 565–66.

This court respectfully declines to follow *Aguilar's* rationale for two reasons. First, significant facts in the case at bar differ from those found in *Aguilar*. Unlike plaintiffs in the present case, plaintiffs in *Aguilar* were not required by their employer to conduct transport checks and respond to immigration-related calls while commuting. Second, the court disagrees with *Aguilar's* underlying premises.

This court disagrees with *Aguilar's* interpretation that the words "principal activity or

---

that the excepting language of § 4 [of the Portal Act] was intended to exclude from F.L.S.A. coverage only those activities "predominantly ... spent in [the employees'] own interests." No benefit may inure to the company. The activities must be undertaken "for [the employees'] own convenience, not being required by the employer and not being necessary for the performance of their duties for the employer." 527 F.2d at 398 (citations omitted).

**6.** Following the three prong *de minimis* test enunciated in *Lindow v. United States*, 738 F.2d 1057 (9th Cir.1984), the court in *Reich* held:

Considering the administrative difficult of establishing a reliable system for recording the time spent in such care during [plaintiffs'] commutes, the irregularity of the occurrence, and the tiny amount of aggregate time so expended, we conclude that these episodes of additional compensable work are *de minimis* and, therefore, need not be compensated. *Reich*, 45 F.3d at 652.

activities" should be narrowly construed to effectuate Congress' intent in passing the Portal Act. *Aguilar*, 36 Fed.Cl. at 565. When passing the Portal Act, Congress intended for courts and agencies to construe these terms liberally in order to ensure compensation for all work of consequence performed by employees for their employers, regardless of the time of day such work is performed. *See* 29 C.F.R. § 790.8(a) (1996) ("The legislative history [of the Portal Act] ... indicates that Congress intended the words 'principal activities' to be construed liberally ... to include any work of consequence performed for an employer, no matter when the work is performed."); *Barrentine v. Arkansas–Best Freight Sys., Inc.,* 750 F.2d 47, 50 (8th Cir.1984) ("The legislative history of the Portal-to-Portal Act ... make[s] clear that the terms 'principal activity or activities,' which must be paid for, are to be read liberally."); *Dunlop,* 527 F.2d at 398 (same) (citing 29 C.F.R. § 790.8(a)); *cf. Reich,* 45 F.3d at 651 (observing that "even if the [Portal Act's] travel [time] exemption protected the employer from being responsible for compensating *travel time*, it would not follow that the employer is exempt from payment for actual work required to be done during such travel"). In sum, *Aguilar* interprets the FLSA too restrictively and the Portal Act too broadly. *See Dunlop,* 527 F.2d at 400 (reversing lower court because it "gave a narrower interpretation of the F.L.S.A. and a broader interpretation of the Portal-to-Portal Act exemption than ... warranted, either by the legislative history of the statutes or by the decisions construing them").

The court also departs from *Aguilar's* second underlying premise—to wit, that the Portal Act's commute and preliminary/postliminary exceptions, 29 U.S.C. § 254(a)(1) and (a)(2) respectively, set forth separate and distinct categories of noncompensable activities. *See Aguilar,* 36 Fed.Cl. at 565–66. At bottom, the activities listed in these two subsections have a common denominator— they are all preliminary or postliminary activities. Subsection (a)(2) precludes compensation for all preliminary and postliminary activities and subsection (a)(1) specifically bars compensation for the preliminary and postliminary activities of "walking, riding, or traveling to and from the actual place of performance of the principal activity." 29 U.S.C § 254(a)(1). The regulations implementing the Portal Act bolster this interpretation. *See* 29 C.F.R. § 785.9 (1996) (relating that Portal Act "eliminates from working time certain travel and walking time and other similar 'preliminary' and 'postliminary' activities performed 'prior' or 'subsequent' to the 'workday' that are not made compensable by contract, custom, or practice"); 29 C.F.R. § 790.7(b) (1996) ("The following 'preliminary' and 'postliminary' activities are expressly mentioned in the Act: 'Walking, riding, or traveling tò or from the actual place of performance of the principal activity or activities....' "). For this reason the same test should apply to both subsections to determine whether the activities in controversy in a given case fall within the confines of either subsection or whether the activities in question are integral and indispensable to the employee's principal duties and therefore escape the subsections' exceptions to FLSA compensation.[7]

---

7. *Aguilar* accords particular significance to certain language in *Steiner* intimating that employee commuting time is noncompensable *per se* under section 254(a)(1) of the Portal Act. 36 Fed.Cl. at 565. *Steiner* did not involve commuting time. Nonetheless, in that case the Supreme Court stated that "activities performed either before or after the regular work shift ... are compensable ... if those activities are an integral and indispensable part of the [employee's] principal activities ... *and are not specifically excluded by Section 4(a)(1)* [of the Portal Act]." *Steiner,* 350 U.S. at 256, 76 S.Ct. at 335 (emphasis added). *Aguilar* interpreted this sentence to stand for the proposition that all employee commutes are noncompensable, regardless of whether substantial

work is performed during such commutes. This reading is inconsistent with several DOL regulations explaining the Portal Act's effect on the FLSA. *See* 5 C.F.R. §§ 551.422(a)(2), 551.401, 550.112(g); *see also* 29 C.F.R. §§ 785.41, 790.7(d), 790.7(d) n. 47. In general, these long-standing regulations require employers to compensate employees for work that employees perform while commuting. Because they were issued by the agency charged with implementing and interpreting the FLSA and the Portal Act, these DOL regulations are entitled to substantial deference. *See Rosete v. OPM,* 48 F.3d 514, 518–19 (Fed.Cir.1995) ("[D]eference must be given to an agency's consistent, long-standing regulatory interpretation of the statute so long as it is rea-

Under the approach enunciated in *Reich,* the court determines whether the activities performed by employees while commuting are integral and indispensable to their principal duties by examining: 1) whether the activities are required by the employer; 2) whether the activities are for the employee's convenience or primarily benefit the employer; and 3) whether a close relationship exists between the activities in question and the employee's principal activities. *See Reich,* 45 F.3d at 650.

Plaintiffs argue that *Reich* and *Aguilar* are readily distinguishable from the facts of the present case and direct the court's attention to the district court's decision in *Baker.*[8] In *Baker,* pursuant to a Home Dispatch Program ("HDP"), plaintiff telephone company employees of GTE drove to and from work in specially designed employer-owned vehicles. 927 F.Supp. at 1108.[9] During their commutes plaintiffs performed several duties and were subject to numerous restrictions. For example, while commuting plaintiffs had to fuel and inspect their vehicles, wear their uniforms, and monitor their radios. The HDP required plaintiffs to drive their GTE vehicles from their homes directly to their first work stations and from their last work stations directly to their homes. Plaintiffs received no compensation for these commutes. GTE employees who did not participate in the HDP ("non-HDP participants") commuted in a different manner than plaintiffs. Non–HDP participants drove their personal vehicles to GTE's facilities, picked

up GTE vehicles at GTE's facilities, and drove these GTE vehicles from GTE's facilities to their first work sites. At day's end, non-HDP participants drove from their last work sites back to GTE's facilities, exchanged vehicles again, and drove their personal vehicles home. Non–HDP participants' paid shifts began and ended at the GTE facilities. As such, non-HDP participants received compensation for the time they spent driving their GTE vehicles from GTE's facilities to their first work stations and from their last work stations back to GTE's facilities. Plaintiffs, however, received no compensation for their commutes, which did not require them to check in at GTE's facilities.

Emphasizing that the HDP benefitted GTE, that GTE denied plaintiff HDP participants commute time compensation, and that GTE provided non-HDP participants with such compensation, the court held that plaintiffs' entire commutes were integral and indispensable to their principal duties and therefore compensable. *Id.* at 1113. The court reasoned:

> GTE receives significant economic benefits as a result of the HDP because each [HDP participants'] workday contains a greater proportion of time installing and maintaining telephone ... equipment at the same cost to GTE, which in turn increases GTE's responsiveness to customer demands. Further, GTE's [non-HDP participants] are compensated for the time they spend driving GTE vehicles to and from

---

sonable."); *Wassenaar v. OPM,* 21 F.3d 1090, 1092 (Fed.Cir.1994) ("[A] court must give deference to an agency's interpretation of a statute, as long as that interpretation is drawn from among alternative reasonable interpretations...").

This court reads *Steiner* to stand for the proposition that section 254(a)(1) of the Portal Act precludes compensation for normal commuting time. *See Graham,* 828 F.Supp. at 580 (finding that "Section 4(a)(1) explicitly excludes *ordinary* commuting time from FLSA coverage[,]" and asking whether commutes in question were integral to employees' principal duties and therefore beyond reach of Portal Act's commute time compensation exception) (emphasis added). The DOL regulations are consistent with *Steiner* because they interpret Portal Act section 254(a)(1) to remove normal commuting time from FLSA compensation requirements. These DOL regulations also provide that employee commutes en-

tailing substantial work differ from normal commutes. In short, the regulations take a common-sense approach and teach that section 254(a)(1) of the Portal Act deems normal commuting time noncompensable and therefore is inapplicable to commutes during which employees perform work for their employers.

8. As discussed *infra,* the Seventh Circuit reversed the district court's decision in *Baker* after the parties in the present case submitted their final briefs. *See Baker v. GTE North Inc.,* 110 F.3d 28 (7th Cir.1997), *rev'g,* 927 F.Supp. 1104 (N.D.Ind. 1996).

9. Plaintiffs elected to participate in the HDP. In so doing, they acknowledged in a written agreement with GTE that they would not receive compensation for their time spent commuting. *See Baker,* 110 F.3d at 29.

the first and last work sites, ... as were the plaintiffs before [choosing to participate in] the HDP.

*Id.* Seeking to rectify this disparity, the court in *Baker* provided plaintiffs with FLSA compensation for their commutes.

After the conclusion of briefing in the present case, the United States Court of Appeals for the Seventh Circuit reversed the district court's decision. *Baker,* 110 F.3d 28. The Seventh Circuit based this reversal on a recent amendment to the Portal Act providing that

> the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

Employee Commuting Flexibility Act of 1996, § 2102, Pub.L. No. 104–188, 110 Stat. 1755, 1928 (1996) ("the amendment" or "the 1996 amendment"). Interpreting the amendment, the Seventh Circuit ruled that the parties in *Baker* agreed in writing that plaintiffs would not receive compensation for their commutes; that the commutes occurred "within the normal commuting area;" and that the activities plaintiffs performed while commuting, such as buying fuel and conducting standard vehicle inspections, were "incidental to" the use of plaintiffs' vehicles. *Baker,* 110 F.3d at 30–31.[10]

Defendant has urged this court to apply the 1996 amendment in a similar fashion to bar plaintiffs' compensation claims. The court is unable to take this step. By its own terms, the 1996 amendment applies only if the use of the employer's vehicle for commuting purposes is subject to an employee-employer agreement that precludes compensation for such commutes. *See* H.R. Conf. Rep. No. 104–737, at 359, *reprinted in* 1996 U.S.C.C.A.N. 1474, 1851 ("The House bill would clarify the Portal–to–Portal Act of 1947 to allow employers and employees to agree on the use of employer provided vehicles to commute to and from work at the beginning and end of the workday, without the commuting time being treated as hours of work."). Such an agreement is absent in the present case. Despite defendant's protestations to the contrary, the record is devoid of any evidence establishing that plaintiffs and the INS formed an agreement to the effect that plaintiffs would not be paid for their time spent commuting. In *Baker* the Seventh Circuit expressly noted that the plaintiffs signed an agreement with their employer acknowledging that they would not be paid for their commuting time. *See Baker,* 110 F.3d at 29.

### 4. *Regulations construing the FLSA and the Portal Act*

Plaintiffs seek support for the contention that their commuting activities are compensable in 29 C.F.R. § 790.8 (1996), a Department of Labor ("DOL") regulation promulgated pursuant to the FLSA and the Portal Act. This regulation embodies the purpose of the FLSA and the Portal Act because it provides that the Portal Act's terms "principal activity or activities" should be construed broadly. 29 C.F.R. § 790.8 (noting that Portal Act's "legislative history ... indicates that Congress intended the words 'principal activity or activities' to be construed liberally"). This agency pronouncement comports with the decisional law discussing the relationship between the FLSA and the Portal Act. *See Barrentine,* 750 F.2d at 50 ("The legislative history of the Portal–to–Portal Act ... make[s] clear that the terms 'principal activity or activities,' which must be paid for [under the FLSA], are to be read liberally."); *Dunlop,* 527 F.2d at 398 (relating that Con-

---

**10.** The Seventh Circuit also deemed the amendment to be "fully retroactive." *Baker,* 110 F.3d at 29–30. It cited the unambiguous language of § 2103 of the 1996 amendment, which provides that the amendment "shall take effect on the date of the enactment of this Act [August 20, 1996] and shall apply in determining the application of section 4 of the Portal–to–Portal Act of 1947 to an employee in any civil action brought before such date of enactment but pending on such date." *Id.* (quoting Employee Commuting Flexibility Act, § 2103, 110 Stat. at 1928).

gress enacted Portal Act with intention that phrase "principal activity or activities" would be interpreted broadly); *Baker,* 927 F.Supp. at 1115 ("Congress intended the words 'principal activity or activities' to be construed liberally ... to include any work of consequence performed for an employer, no matter when the work is performed.") (quoting 29 C.F.R. § 790.8(a)).

The President's Message to Congress on Approval of the Portal–to–Portal Act amplifies agency, Congressional, and judicial directives to construe employees' principal activities liberally. While endorsing the view that the term "principal activities or activities" ought to be interpreted broadly, President Truman stated:

> As to Section 4 [of the Portal Act], ... the legislative history of the Act shows that the Congress intends that the words "principal activities" are to be construed liberally to include any work of consequence performed for the employer, no matter when the work is performed. We should not lose sight of the important requirement under the Act that all "principal activities" must be paid for.... I am sure the courts will not permit employers to use artificial devices such as the shifting of work to the beginning or end of the day to avoid liability under the law [the FLSA].

President's Message to Congress on Approval of the Portal–to–Portal Act, 93 Cong. Rec. 5418, 80th Cong., 1st Sess. (1947), *reprinted in* 1947 U.S.C.C.A.N. 1827–28.

The crux of the President's message is captured in 5 C.F.R. § 550.112(g) (1996), the Office of Personnel Management ("OPM") regulation dealing with overtime compensation for travel time under the FLSA. This regulation provides, in pertinent part, that time spent traveling is compensable only when the travel involves the performance of actual work or is "carried out under such arduous and unusual conditions that the travel is inseparable from work." *Id.* § 550.112(g)(2)(i), (iii).[11]

### 5. *Whether plaintiffs' commutes are compensable*

Plaintiffs' factual allegations may entitle them to FLSA compensation for some of the activities they perform while commuting if those activities occur with sufficient regularity to pass the *de minimis* bar. This is because certain activities that plaintiffs claim to perform while commuting—conducting searches; taking care of their canines; responding to sensors and immigration related calls; and rendering assistance to state, local, and other government agencies—would be integral and indispensable to their principal activities.[12] This conclusion is reached by application of the test set forth *Reich* to plaintiffs' factual assertions in the instant action: 1) Plaintiffs claim they are required to perform these activities during their drives to and from work, and these activities are conducted under control of the INS; 2) these activities primarily benefit the INS; and 3) these activities are similar and, in

---

11. The court in *Aguilar* attempts to diminish the impact of 5 C.F.R. § 550.112(g) and two similar travel time regulations, 5 C.F.R. §§ 551.401 and 551.422(a)(2), by concluding that they are "modified" by 5 C.F.R. § 551.422(b) (1996). 36 Fed. Cl. at 567. 5 C.F.R. § 551.422(b) provides that "[a]n employee who travels from home before the regular workday begins and returns home at the end of the workday is engaged in *normal* 'home to work' travel; such travel is not hours of work." (Emphasis added.) Contrary to *Aguilar*'s interpretation, 5 C.F.R. § 551.422(b) has no bearing on 5 C.F.R. §§ 551.401 and 551.422(a)(2) (and their analogue, 5 C.F.R. § 550.112(g)). The former regulation simply states the truism that normal commuting time is rendered noncompensable by the Portal Act travel exception, 29 U.S.C. § 254(a)(1). The latter regulations also set forth a truism—that employees are entitled to FLSA pay whenever they per-

form work while commuting. *See* 29 C.F.R. § 785.41 ("Any work which an employee is required to perform while traveling must, of course, be counted as hours worked.") In sum, *Aguilar's* interpretation of 5 C.F.R. § 551.422(b) contradicts the plain meaning of 5 C.F.R. §§ 551.401 and 551.422(a)(2) (and 5 C.F.R. § 550.112(g)) and would render these regulations meaningless because they delineate the circumstances in which employee commutes are compensable.

12. The court recognizes that defendant disputes these material facts. Nevertheless, plaintiffs are precluded from recovering the compensation they seek, because, as discussed in section 4 of this opinion, the time plaintiffs spend performing the activities in dispute is *de minimus* and therefore noncompensable.

some instances identical, to the principal activities that the INS employs plaintiffs to perform. *See Reich*, 45 F.3d at 650.

Contrary to defendant's arguments, the above activities are not merely pre- or post-liminary to plaintiffs' principal duties. It cannot be said that responding to sensors and calls for assistance are activities "predominantly ... spent in [the employees'] own interests" from which "no benefit ... inure[s] to the company." *Dunlop*, 527 F.2d at 398 (citations omitted). Likewise, these activities are not performed for plaintiffs' own convenience. Instead, plaintiffs perform these activities under INS' direction and control in order to benefit the INS.

Plaintiffs' version of the facts also compels the conclusion that these activities are closely related to plaintiffs' principal activities. Defendant's argument that these additional activities fall within the Portal Act's travel and preliminary/postliminary exceptions is an unavailing interpretation of the controlling law and is belied by the facts. The Portal Act commute and preliminary/postliminary exceptions relieve employers from FLSA liability "for relatively trivial, non-onerous aspects of preliminary preparation, maintenance and cleanup." *Reich*, 45 F.3d at 651. Congress' creation of FLSA compensation exceptions for "such conventionally unpaid preliminaries" does not, however, mean that actual work performed is noncompensable simply because it takes place outside the confines of an employee's paid workday. *Id.*

Plaintiffs perform several principal activities during their paid workdays. For example, they conduct transportation checks. respond to sensors, and respond to immigration-related calls requiring the assistance of their canine partners. While commuting to and from work, plaintiffs claim to perform almost identical functions. For example, during their commutes, plaintiffs contend that they must conduct transportation checks and respond to assistance calls and sensors. Because these are among the tasks that comprise the bulk of plaintiffs' paid shifts, they fall within the broad scope of principal activities performed at the behest and for the benefit of the employer. *See Dunlop*, 527 F.2d at 401. The INS therefore cannot avoid its FLSA obligations merely because plaintiffs perform these tasks before and after their scheduled workdays begin and end. *See id.* at 401 (finding Portal Act travel exception inapplicable where employees performed activities for which they would have received compensation had such tasks been performed during their scheduled shifts); *Graham*, 828 F.Supp. at 582 n. 3 (same).

A different result would be reached with respect to the other activities that plaintiffs claim to perform while commuting, namely, listening to and signing on and off their vehicle radios, observing traffic, and looking out for suspicious activity. In an effort to render the entire duration of their commutes compensable, plaintiffs assert that they perform these activities throughout their commutes.[13] Plaintiffs argue that their constant state of vigilance while commuting converts their commutes into compensable work. In short, plaintiffs are contending that they are required to drive with their eyes and ears open. This goes too far. The argument plaintiffs use to justify compensation for their entire commutes would also require the

---

**13.** Plaintiffs also argue strenuously that, because they are subject to numerous restrictions while commuting, their entire commutes are compensable. This argument is unpersuasive. The restrictions to which plaintiffs refer (the prohibition against personal use of their government-owned vehicles and the requirement that they wear their uniforms while driving) are placed on countless government employees who enjoy the benefit of saving money by commuting in government-owned vehicles rather than their personal vehicles. Plaintiffs' argument would mandate FLSA compensation for all government employees who commute in government-owned vehicles. Moreover, their argument runs contrary to the well-established rule in this circuit that travel to and from work in a government-owned vehicle is not compensable. *See Ahearn v. United States*, 142 Ct.Cl. 309, 313 (1958) (finding travel to and from work via government-owned boats noncompensable); *Abrahams v. United States*, 1 Cl.Ct. 305, 309 (1982) ("Prior cases involving employee transportation on Government-owned and operated vehicles ... have also determined that this type of travel ... cannot be considered 'work.'") (citing *Mossbauer v. United States*, 541 F.2d 823, 825–26 (9th Cir.1976); *Ayres v. United States*, 186 Ct.Cl. 350, 355–58, 1968 WL 9163 (1968); and *Ahearn*, 142 Ct.Cl. at 313).

INS to provide plaintiffs with round-the-clock compensation because plaintiffs, as other law enforcement officers, are essentially "on-duty" 24 hours a day. Plaintiffs' obligation to be vigilant with respect to immigration-related problems does not end when plaintiffs' scheduled shifts conclude. Plaintiffs will not close their eyes to an immigration infraction merely because they are not on the clock. This constant state of vigilance leads to the prevention of immigration infractions, for which plaintiffs receive recognition, promotions, and awards. Plaintiffs do not, however, receive compensation 24 hours a day for maintaining this heightened state of vigilance, so FLSA pay is not warranted for commuting while maintaining a sharp lookout for suspicious activity and the like.

As defendant argues, activities such as listening to and signing on and off their radios would not render plaintiffs' commutes compensable in their entirety. Support for this finding is found in *Agner v. United States*, 8 Cl.Ct. 635 (1985), *aff'd* 795 F.2d 1017 (Fed. Cir.1986) (table). Plaintiffs in *Agner*, members of the Library of Congress police force, sought FLSA compensation for their lunch breaks. Plaintiffs argued that they were required to remain on the premises, listen to their radios, and respond to emergency calls during their lunches. Observing the "non-onerous" nature of these requirements, the court held that they did not convert plaintiffs' lunch breaks into compensable work. *Id.* at 638. *Agner* stands for the proposition that otherwise noncompensable time is not rendered compensable for FLSA purposes because of a requirement that an employee listen and respond to an employer-owned radio. Applying this proposition to the present case, plaintiffs' commutes are not rendered compensable in their entirety simply

because plaintiffs must sign on and off and monitor their radios while commuting.[14]

In their most enthusiastic attempt to obtain compensation for the duration of their commutes, plaintiffs urge the court to follow the reasoning of the district court in *Baker*.[15] The court in *Baker* took issue with defendant GTE's policy of paying non-HDP participants for a portion of their commutes, but not paying plaintiff HDP participants for any part of their drives to and from work. Concluding that plaintiff HDP participants performed the same tasks as the non-HDP participants—commuting to and from work—the court ruled that because GTE paid non-HDP participants for their commutes plaintiffs deserved commute compensation as well. 927 F.Supp. at 1113.

Unlike plaintiff HDP participants in *Baker*, plaintiff border patrol agents in this case do not drive their government-issued cars from home to their first work assignments; instead, plaintiffs travel from home to their sector offices and from their sector offices to their first work sites. INS border patrol agents who are not canine handlers commute in the same manner—from home to sector office to their first work stations. Moreover, both groups of employees—canine handlers and non-canine handlers—receive compensation for their time spent traveling from their sector offices to their first work stations and from their last work stations back to their sector offices. Neither set of employees receives compensation for their drives from home to the sector offices at the start of the workday and from those sector offices to their homes at the workday's end. The disparity in commute compensation between two groups of employees relied by the court in *Baker* is therefore absent in the instant litigation.[16]

14. If the court found the 1996 amendment applicable to the present case, which it did not, these activities would undoubtedly fall within its purview.

15. The court recognizes that the Seventh Circuit reversed the district court's decision in *Baker*. This reversal was predicated on the 1996 amendment's application to the facts in that case. Because the requisite employee-employer agreement is lacking in this case, the 1996 amendment is inapplicable. Consequently, this court must

analyze the nature of the activities plaintiffs perform while commuting and determine whether those activities are integral and indispensable to plaintiffs' principal activities. Because the district court in *Baker* conducted this very analysis, a discussion of *Baker* at the district court level is helpful in resolving the case at bar.

16. Another factor motivating the court in *Baker* to compensate plaintiffs for their commutes was the substantial benefit that plaintiffs conferred on GTE through their participation in the HDP. This

### 6. *The de minimis doctrine*

Defendant argues that the *de minimis* doctrine applies and renders the theoretically compensable activities that plaintiffs perform while commuting noncompensable. This doctrine relieves employers from FLSA liability where otherwise compensable time is so negligible as to be *de minimis*. The Supreme Court first explained the *de minimis* doctrine in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946):

> When the matter in issue only concerns a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded. Split-second absurdities are not justified by the actualities of working conditions or by the policies of the [FLSA]. It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved.

*Id.* at 692, 66 S.Ct. at 1195.

Against this backdrop the court in *Lindow v. United States*, 738 F.2d 1057 (9th Cir. 1984), expressly stated the three factors that courts should consider in determining whether otherwise compensable time should be disregarded because it is *de minimis*: "(1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work." *Id.* at 1063. Additionally, the court noted that the amount of time per occurrence dedicated to the activity in question should be considered in making the *de minimis* analysis. *Id.* at 1062.

A common-sense assessment of these *Lindow* factors supports the conclusion that the *de minimis* rule applies to the present case and bars compensation for the otherwise compensable duties plaintiffs perform while commuting.[17] The court's jurisprudential journey into the realm of canine care is guided by the declarations of five plaintiffs that are submitted with plaintiffs' supplemental brief addressing the applicability of the *de minimis* doctrine. Plaintiffs assert that their dog care duties encompass 1) maintaining a comfortable air temperature for the dogs in the vehicles; 2) providing the dogs with plenty of drinking water; 3) stopping to allow the dogs to relieve themselves and exercise when necessary; and 4) cleaning the dog's vehicle kennel.

In their brief plaintiffs claim that they must interrupt their commutes frequently to allow their dogs to relieve themselves.[18] Only three of the five declarants, however, assert that a portion of their commutes is dedicated to supervising these relief breaks. Mr. Bobo states that he must stop for relief breaks ten times per week (once during each leg of his commute) and that each relief session takes five minutes. Declaration of Jerry Bobo, Feb. 12, 1997, ¶¶ 4–6. In contrast, Mr. Clanahan claims that he accompanies his canine on relief breaks whenever his canine needs to go and that these stops range from five to 15 minutes in duration. Declaration of Steven L. Clanahan, Feb. 25, 1997, ¶ 6.[19] Mr. O'Dell, whose canine appar-

---

employer benefit is missing in this case. Unlike *Baker*, plaintiffs follow the same commuting paths as their noncanine handler border patrol agent counterparts—from home to sector office to first work site and the reverse on the way home. In contrast to the *Baker* plaintiffs, plaintiffs' commutes in the case at bar do not enable them to spend a greater percentage of their time conducting immigration related duties for the INS' benefit. As such, plaintiffs' commutes afford the INS with no substantial benefits. Rather, plaintiffs are benefitted economically by commuting in government-owned vehicles instead of their personal vehicles. Plaintiffs' commutes therefore primarily benefit themselves, not the INS.

**17.** *See supra* pp. 698–99 for a discussion of plaintiffs' commuting activities that the court deems integral and indispensable to plaintiffs' principal duties and therefore theoretically compensable.

**18.** The court notes that when plaintiffs assumed the responsibility of caring for their canines they also acknowledged the possibility that the canines would sometimes need to relieve themselves.

**19.** Mr. Clanahan's commute, which takes a total of six minutes each way. is apparently too long for his canine to wait to relieve itself. Similar to the other four declarants, Mr. Clanahan offers the court no explanation as to why his canine cannot simply relieve itself before or after the commute.

ently has a stronger bladder than his counterparts' canines, stops to take his dog on relief breaks once or twice a week and each session takes approximately ten minutes. Declaration of Christopher S. O'Dell, Feb. 12, 1997, at ¶¶ 4–6. Although the court takes gravely its responsibilities in judging claims for overtime pay, making findings on the length of time dogs spend in relieving themselves is *hors de combat* and suggests the marginality of plaintiffs' claims in this respect.

As these facts demonstrate, plaintiffs interrupt their commutes for canine relief breaks anywhere from never, to whenever they need to, to every trip back and forth from work. This evidence hardly constitutes regular occurrences. Moreover, among the plaintiffs who take their dogs on relief breaks, the amount of time that these sessions take is minimal and wide ranging— spanning from five to 15 minutes per occurrence. Creating a reliable system to chart these relief breaks would pose great administrative difficulties to the INS. The logistical difficulties inherent in any such system should be obvious to all. Accordingly, as the court in *Reich* stated when faced with a similar factual scenario, "[the] task of recording the time spent in[volved in] such duties, when they arise, might well exceed the time expended in performance of the duties." 45 F.3d at 653.

Similar to the relief breaks discussed above, the other dog care duties that plaintiffs claim to perform while commuting are conducted 1) irregularly, 2) for minimal periods of time per occurrence and in the aggregate, and 3) would be impractical administratively to record. For example, Mr. Bobo is the lone declarant to state that he stopped to exercise his canine while commuting. Bobo Decl. ¶ 6.[20] Likewise, only one declarant claimed to drive more slowly to prevent injuring his dog. O'Dell Decl. ¶ 4. Two declarants, Messrs. Clanahan and Nelson, asserted that they spent time cleaning or preparing their dogs' kennels, which are located in the back seat of plaintiffs' government-owned vehicles. Clanahan Decl. ¶¶ 4–6; Declaration of Robert O. Nelson, Feb. 11, 1997, ¶¶ 4–6. The court infers, however, that neither agent performed these cleaning activities while driving. Clearly, such cleaning activity occurred either before or after the contested commutes, and plaintiffs already receive compensation for this time.[21]

In addition to their dog care activities, plaintiffs also insist that they perform line-watch duties such as responding to sensors and immigration related calls while commuting. Just like plaintiffs' dog care duties, these theoretically compensable activities fall within the confines of the *de minimis* doctrine because they are conducted irregularly, take a minimal amount of time to perform per occurrence and in the aggregate, and could not be charted without great administrative impracticalities. For example, two of the five declarants have never responded to sensors; their patrol stations do not even have these devices. With respect to the other three declarants, Mr. Banda has responded to four sensors in nearly two years, Mr. Bobo has responded to five in one and one-half years, and Mr. Clanahan has responded to ten in five years. Declaration of Ruben R. Banda, Feb. 12, 1997, ¶ 13; Bobo Decl. ¶ 16; Clanahan Decl. ¶ 16. This activity hardly amounts to regular or routine work. Furthermore, the three declarants who have responded to sensors failed to indicate the amount of time that it takes them to respond to such calls. It is therefore impossible for the court to find that plaintiffs have satisfied the *Lindow* factor requiring that the size of the claim in the aggregate not be insubstantial.

20. Mr. Bobo's contention that he stops to exercise his canine for ten minutes during each leg of his commute cannot be credited without a fuller explanation from plaintiffs. Bobo Decl. ¶¶ 4–6. Mr. Bobo is paid for exercising his dog at home and during his scheduled shift. The court is thus puzzled as to why Mr. Bobo must exercise his dog during a time for which he receives no compensation—his commute.

21. The INS provides plaintiffs with an hour's pay daily for the time plaintiffs spend conducting dog care tasks at home. *See* Memorandum dated June 17, 1996, from Human Resources Branch to Border Patrol Sector Chiefs, Border Patrol Agents in Charge (relating that compensation covers at-home "care, exercise, and maintenance of the animal[s]"). This compensation covers the time plaintiffs spend cleaning their dogs' kennels.

This finding holds true for the time plaintiffs spend responding to emergency and assistance calls. Plaintiffs have not informed the court how long these activities take per occurrence. As such, the size of plaintiffs' aggregate claim is impossible to gauge. Moreover, the irregularity with which the declarants respond to such calls is striking. For example, Messrs. O'Dell and Banda respond to emergency calls roughly one and three times per year, respectively. O'Dell Decl. ¶¶ 11–12; Banda Decl. ¶ 9. Mr. Bobo, on the other hand, responds to approximately 26 emergency calls annually while commuting. Bobo Decl. ¶¶ 11–12. Finally, and perhaps most telling, Messrs. Banda, Bobo, and Clanahan admit that the INS provides them with "administratively uncontrollable overtime" pay whenever they respond to emergency calls while commuting. Banda Decl. ¶ 11; Bobo Decl. ¶ 14; Clanahan Decl. ¶ 14; *see* Def's Proposed Finding of Fact filed Feb. 4, 1997, ¶ 13.[22] The court cannot discern any rationale for paying plaintiffs for tasks that they already receive compensation for performing.

The activities plaintiffs engage in while driving to and from their sector offices before and after their paid workdays begin and end are de minimis and therefore noncompensable.[23] None of these activities occurred regularly, and, more importantly, when they did occur, they lasted for a short period of time, which is insubstantial in the aggregate. Finally, the INS would be hard-pressed to establish a workable system for recording this time. For these reasons, the duties plaintiffs claim to perform while commuting are *de minimis*.[24]

## CONCLUSION

Accordingly, based on the foregoing, defendant's motion for summary judgment is granted, and plaintiffs' cross-motion partial for summary judgment is denied. The Clerk of the Court shall enter judgment for defendant.

**IT IS SO ORDERED.**

---

**22.** Consistent with these admissions, plaintiffs did not contest defendant's proposed finding that [i]f a canine handler is contacted during his or her commute and directed to report to a location other than the station, the canine handler may report the time spent responding to the order or report as time worked and will be compensated either by considering the time they report as the start of their shift and adjusting their departure time accordingly or by claiming it as administratively uncontrollable overtime.

**23.** This finding applies to the transportation checks that plaintiffs claim to perform while commuting and the emergency calls plaintiffs purport to respond to from their homes. Although the court has deemed these activities integral and indispensable to plaintiffs' principal duties and thus theoretically compensable, the record is devoid of any indication as to how often plaintiffs conduct transportation checks and respond to emergency calls from home. Furthermore, plaintiffs failed to ascribe any length of time that these activities take per occurrence. The court concludes that, as with the other theoretically compensable commute duties that plaintiffs claim to perform, these activities are conducted 1) irregularly, 2) for minimal periods of time per incident and in the aggregate, and 3) they would be administratively impractical to record.

**24.** Were this case not properly subject to summary judgment based on the *de minimis* doctrine, plaintiffs would he entitled to a trial on whether they perform the theoretically compensable activities, outlined *supra* pp. 698–99, that they claim to perform during their commutes.